[Cite as *Ohio Power Co. v. Burns*, 2021-Ohio-2714.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Ohio Power Company, | : | Case Nos.    20CA19, 20CA20, |
| | : | 20CA21, 20CA22 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| Michael Burns, et al., | : | |
| | : | **RELEASED 8/04/2021** |
| Defendants-Appellants. | : | |

APPEARANCES:

Joseph R. Miller, Thomas Fusonie, John M. Kuhl, Kara M. Mundy, Vorys, Sater, Seymour and Pease LLP, Columbus, Ohio for Defendants-Appellants.

Ryan P. Sherman, Christopher J. Baronzzi, Jason T. Gerken, Syed Ahmadul Huda, Porter Wright Morris & Arthur LLP, Columbus, Ohio for Plaintiff-Appellee.

Hess, J.

{¶1}   Defendants-Appellants Michael and Misty Burns, Ronald and Barbara Bohlen, Jeffrey and Holly Dexter, and Ryan and Denay May ("Landowners") own property over which Plaintiff-Appellee Ohio Power Company seeks to take easements by eminent domain. The trial court held a necessity hearing and determined that the easements sought by Ohio Power, except the distribution line easements, were necessary, and that Ohio Power's admission during the hearing that an easement for distribution lines was not necessary did not constitute an abandonment. The trial court also denied the Burnses' and Bohlens' motion for judgment on the pleadings based on Ohio Power's invalid petition verifications. The trial court found that their motion to dismiss was not timely, and that even if it were to consider the motion's merits, the invalid verification was inconsequential.

{¶2}   Landowners collectively raise five assignments of error for our review. The Burnses and the Bohlens challenge the trial court's denial of their motion for judgment on the pleadings, arguing that their motion was timely and that Ohio Power's invalid petition verification resulted in a void proceeding. We find that the trial court erred when it determined that the motion was untimely. Under Civ.R. 12(C), a motion for judgment on the pleadings may be made "within such time as not to delay the trial." The "trial" for purposes of R.C. 163.01, et seq. is the jury trial on compensation under R.C. 163.14; Landowners' motion was timely. However, we find that the error was harmless because the trial court addressed the merits of the motion.  Although we find the trial court erred in finding "the verification was accurate," we nevertheless confirm the trial court's denial of the motion on other grounds. We agree with Landowners that the verification was invalid because the Ohio Board of Directors' 2019 Board resolution ("2019 Board resolution") attached as an exhibit to the petition did not exist when the petition was verified. However, at the necessity hearing Ohio Power employees testified about the 2019 Board resolution and authenticated it. Under R.C. 163.12(C), the trial court had discretion to sua sponte "amend any defect or informality in the proceedings under [R.C.]163.01 to [R.C.] 163.22" and deem any deficiency in the petition's verification cured by the hearing testimony. We overrule Landowners' first assignment of error.

{¶3}   All Landowners challenge the trial court's finding that Ohio Power was entitled to both a rebuttable and an irrebuttable presumption of the necessity for the appropriation under R.C. 163.09(B)(1)(a)-(c). First, they contend that the regulatory agency, the Ohio Power Siting Board ("Siting Board"), approved the necessity of the *project*, not the necessity of the *appropriation* of the easement rights.  They contend that

the Siting Board did not review the easements or their terms and, in fact, had no jurisdiction to do so. As a result, the irrebuttable presumption created in R.C. 163.09(B)(1)(c) is inapplicable. Likewise, Landowners contend that because the Ohio Power Board of Directors did not review the easements or their terms, its resolution did not approve any specific easements or easement terms. Therefore, Ohio Power is not entitled to the rebuttable presumption created in R.C. 163.09(B)(1)(a). For their fourth assignment of error, Landowners argue that the trial court erred in finding that Ohio Power met its burden of presenting evidence of the necessity for the appropriation under R.C. 163.09(B)(1)(b) because the trial court improperly deferred to Ohio Power, finding "[t]he public utility is in the best position to determine what is necessary to * * * maintain an electric transmission line now and for many decades into the future * * * ." We find that neither the Ohio Power Siting Board nor the Ohio Power Board of Directors approved the specific appropriations against the Landowners. Therefore, Ohio Power was not entitled to the presumptions set forth in R.C. 163.09(B)(1)(a) and (c). The trial court erred in applying these presumptions in favor of Ohio Power. Likewise, the trial court was mistaken regarding the scope of review to be employed and erred in deferring to Ohio Power on the issue of the necessity of the easements. The trial court also erred in determining that the extent of the taking was a factual question for the jury to consider at the compensation trial. We sustain Landowners' second, third, and fourth assignments of error.

{¶4} Finally, Landowners argue that the trial court erred in concluding that Ohio Power's decision not to pursue an easement for distribution lines was not an abandonment under R.C. 163.21. We agree with the trial court's finding that Ohio Power's

concession was not an abandonment under R.C.163.21. However, we nevertheless find that the trial court erred in how it addressed the distribution line rights issue. Ohio Power lost the right to appropriate easement rights for distribution lines because the Landowners raised a successful challenge in their answer and at the hearing. Under R.C. 163.21(B), Ohio Power was "not entitled to appropriate [that] particular property" and the trial court should have issued a judgment against Ohio Power for costs and determined a just amount in favor of the Landowners for reasonable disbursements and expenses associated with defending against the taking of distribution line rights. We sustain the Landowners' fifth assignment of error on other grounds.

{¶5}   We affirm, in part, and reverse, in part, the trial court's judgment and remand the cause for further proceedings consistent with the decision herein.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶6}   In 2017, the Ohio Power Board of Directors gave initial approval for a project in Marietta, Ohio to enhance the reliability of the electric transmission network. The Board of Directors determined that the existing 23kV network was not strong enough to support the load, was obsolete, and should be replaced with a 138kV network. The project, known as "The Bell Ridge-Devola 138kV Transmission Line Project," (the "Project") included miles of new 138kV transmission lines and required siting, rights of way, and property purchases. In August 2018, the Siting Board issued a certificate of environmental compatibility and public need for the Project. The Ohio Power Board of Directors issued a December 2019 resolution approving the Project.

{¶7}   Ohio Power filed petitions for appropriation against Landowners in 2020 to take easements on their property after efforts to negotiate easements failed.  Ohio Power

alleged that it currently possessed an easement across each of the Landowners' properties for an existing electric power line, but it was replacing that line with a new line that would require a wider easement area.[1]  Ohio Power alleged that the appropriation was necessary and for a public good. The petitions included among the exhibits: (1) a copy of the proposed easement; (2) a copy of the Siting Board's August 2018 certificate of environmental compatibility and public need for the Project; and (3) the Ohio Power Board of Directors December 2019 resolution recognizing the necessity of the Project and of acquiring easements, rights of way, or fee simple titles along approximately ten miles of the new line.

{¶8}    Landowners filed answers in which they denied that the easements were necessary and denied that the Siting Board's August 2018 certificate declared the appropriation a necessity. Landowners alleged that the proposed easements were: (1) overly broad, (2) sought rights for not only Ohio Power, but "successors and assigns," (3) sought rights to allow "electric transmission, distribution and internal communication lines," (4) sought to have the right to "reconstruct, . . . alter, improve, extend, inspect, patrol, protect, repair, remove, replace, upgrade and relocate" multiple communication lines, equipment, fixtures, wire, and cables, and (5) to do anything "convenient for the enjoyment of the Easement." Landowners also alleged that the easements contained no limit on the assignability of the easements and took anti-abandonment rights for Ohio Power and its successor and assigns. Landowners contended that all these additional rights contained in the easements were more than necessary to promote the public use. Landowners also requested mediation under R.C. 163.051, which allows either party to

---

[1] Ryan and Denay May's property purportedly did not have an existing easement over it; the petition against them did not contain this allegation.

ask that the determination of the value of the property be submitted to nonbinding mediation, which must conclude within 50 days after the answer is filed.

{¶9}   The trial court held a consolidated hearing under R.C. 163.09 to determine any matters relating to: (1) the right to make the appropriation, (2) the inability of the parties to agree, or (3) the necessity for the appropriation.  Prior to the hearing, Ohio Power submitted a pre-hearing brief in which it argued that the Siting Board approved the Project and that "project approval" meant that "the appropriations sought in these cases have actually been deemed necessary and approved." Ohio Power contended that the Siting Board's certificate declaring that the Project "will serve the public interest, convenience, and necessity" is the equivalent of an "approval by a state * * * regulatory authority of an appropriation by a public utility" and therefore the "irrebuttable presumption of the necessity for the appropriation" created in R.C. 163.09(B)(1)(c) applies here: "That should be the beginning and end of the Court's analysis."  Ohio Power argued that the trial court should not review the terms and conditions of the specific easements at issue.

{¶10} At the hearing, Ohio Power presented the testimony of Ms. Rentschler, senior transmission right-of-way agent who served as the lead agent on the Project. Ms. Rentschler testified that the existing 23 kilovoltage transmission lines were 50 years old, supported by wooden poles, were deteriorating, and had approximately 33 outages during a three-year period.  The new lines would carry higher 138 kilovoltage and be supported by a steel H-frame structure. The new lines would be built approximately 50 feet from the existing lines so that the old lines could continue providing electricity during the construction of the new lines.  Ms. Rentschler reviewed the Siting Board certificate and testified that it determined that "the proposed facility would serve the public interest,

convenience, and necessity" and the certificate constituted a declaration of necessity. Ohio Power Board of Directors, through a separate internal corporate resolution process by which the Board reviews the Project, assessed the impact, and determined that it "is a required project and subject to potential use of eminent domain, if necessary." Ms. Rentschler reviewed an exhibit marked by counsel and testified that it was a copy of the December 2019 Board resolution approving the Project.

{¶11} Ms. Rentschler testified that Ohio Power uses several different easement forms for its electric lines depending upon the circumstances. If Ohio Power is negotiating directly with a property owner, the easement contains broader terms. However, if Ohio Power has filed an appropriation petition, it uses a "litigation easement" with those property owners. Ohio Power narrowed the scope of its litigation easement form in the Spring of 2020. Ms. Rentschler explained that the prior version of the litigation easement form was "much broader" and included "rights for our distribution assets, it allowed us the ability to more broadly be able to construct, operate, and maintain our assets." The broad litigation easement form was used for thousands of landowners over the past five to ten years across thousands of miles of transmission lines in Ohio. Ms. Rentschler testified that the litigation easement form was modified after landowners involved in a different project in Pickaway County challenged the necessity of the terms of the standard, broader litigation easement form.

{¶12} Ms. Rentschler testified about other limitations Ohio Power made recently to its litigation easement form and stated that the current easement form limits the amount of kilovoltage that can be carried over the landowner's property. The easements involved

in the current petition limits the kilovoltage to "a single electric transmission line not to exceed 138kV." Ms. Rentschler explained:

> That is new. Traditionally, we did not define our voltage in our easement documents, that we were merely acquiring a corridor and we could construct whatever could safely operate within that corridor.
>
> We have moved to limiting ourselves to not exceed that 138kV threshold and have any ability to place anything larger within the corridor.

Ms. Rentschler testified that the easements at issue in this appropriation include the right to place distribution lines (lines which service homes and business) within the easement. However, after filing the petition, Ohio Power decided "to drop" the distribution line in these easements because, "[i]t was determined that distribution is not immediately planned for this line and therefore, we are not seeking that right."

{¶13} Ms. Rentschler testified about the general terms of the easements and explained how, in her "experience," "they were all reasonably necessary to safely operate, maintain a high voltage electric transmission line."

{¶14} On cross-examination, Ms. Rentschler conceded that the reason Ohio Power was using the more narrowly drawn litigation easements for the Landowners in this appropriation case was because the same attorneys were representing the Landowners here that were defending the landowners in the Pickaway County appropriation case. She also conceded that Ohio Power's standard litigation easement form broadly includes the right to install distribution lines and therefore this right was included in the easements attached to the appropriation petitions against the Landowners. However, Ohio Power decided to remove distribution line rights from the easement after the Landowners challenged the necessity of it:

Q. In any event, AEP[2] has not [sic] plans to build distribution lines on this project; correct?

A. That's correct. And we've offered to remove that from our easement document.

Q. Well, in fact, you only offered to remove it from your easement documents after the landowners challenged the necessity of the easement. Correct?

A. That's correct.

{¶15} The easements also include an anti-abandonment clause which states, "The failure of AEP to exercise any of the rights granted herein, or the removal of any facilities from the Easement, shall not be deemed to constitute an abandonment or waiver of the rights granted herein." Ms. Rentschler testified that an easement that is abandoned through nonuse reverts back to the property owner and that Ohio Power is taking this right away from the Landowners. When asked why, if Ohio Power no longer needed the easement, the property could not simply revert back to the Landowners, she testified that "That's something we could negotiate or - - do the paperwork to clear title once those facilities are removed." Ms. Rentschler was unable to explain the need for the anti-abandonment provision other than to speculate that, even after the easement was abandoned, "we may need to come back and build the line again. I can't - - I can't speak to that more than - - than that."

{¶16} The Landowners presented the testimony of Mr. Berkemeyer, assistant secretary of Ohio Power and associate general counsel for AEP. He testified that the Ohio Power Board of Directors passed a resolution recognizing the necessity of the Project and the necessity of acquiring easements and rights of way in connection with the Project.

---

[2] Ohio Power is a subsidiary of AEP and the parties used these terms interchangeably throughout the case. For consistency, we refer to the plaintiff/appellee as Ohio Power.

However, he stated that the resolution and his certification of it contained an incorrect date of December 18, 2019 for the meeting. The meeting actually occurred on December 11, 2019.  Mr. Berkemeyer testified that this was a clerical error.  Other than the clerical error, Mr. Berkemeyer was able to authenticate the December 2019 Board resolution as an Ohio Power business record. The 2019 Board resolution was admitted as an exhibit without any objection from Landowners.

{¶17}  Mr. Berkemeyer also reviewed the verification of the petitions filed against the Burnses and the Bohlens, which was made by Brenda Unternaher on November 22, 2019 and October 23, 2019, respectively. He testified that Ms. Unternaher could not have possibly – in October and November 2019 – reviewed and truthfully verified the accuracy of the December 2019 Board resolution. Landowners moved for judgment on the pleadings to dismiss the Burns and Bohlen petitions for failure to comply with the verification requirement of R.C. 163.05, which the trial court took under advisement and subsequently denied.

{¶18}  Mr. Berkemeyer testified that the Ohio Power Board does not specifically consider the appropriation of individual easements, does not review the terms of the easements, does not vote to approve the specific easements or the easement forms, does not know who the individual Landowners are, and does not know what specific rights are being sought from the Landowners. The Ohio Power Board does not vote on or approve specific easements as part of its review process, but rather gives its agents the authority to negotiate the purchase of property or file a "condemnation case" for the acquisition of property.

{¶19}  Landowner Mr. Burns testified that he purchased his property over 20 years ago as his retirement home.  He testified that the original easement had smaller wooden lines and he is concerned because, "[n]o matter what's written, it seems like it can grow bigger and bigger."  He testified that he would like the court to require Ohio Power to keep everything within the footprint of the existing easement and specify the materials and the structures to be used to support the wires.  Mr. Burns testified that he has not negotiated with Ohio Power over the specific easement terms because he wants the easement for the new lines to be located elsewhere.

{¶20}  The parties submitted post-hearing briefs with proposed findings of fact and conclusions of law. Ohio Power reiterated its position that because the Siting Board approved the Project, the trial court has no authority to review the scope of the easements to determine whether they are overly broad.  It argued that judicial review is only necessary in cases where "there is a showing of discrimination, bad faith, impermissible financial gain, or other improper purpose."  Ohio Power contended that Landowners have not made any such showing, thus the trial court has no obligation to "second guess" the breadth of property rights Ohio Power is taking through its easements.

{¶21}  Landowners argued that the trial court's role was to review the scope of the easements to ensure Ohio Power takes no more than necessary:

> There can be no doubt that our role – though limited – is a critical one that requires vigilance in reviewing state actions for the necessary restraint, including review to ensure that the state takes no more than that necessary to promote the public * * *. *City of Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 69.

Landowners argued that after *Norwood,* the Ohio Legislature amended Chapter 163 and specifically amended R.C. 163.09(B)(2) to require courts to conduct an analysis of the

taking and make necessity decisions as "to any or all of the property or other interests sought to be appropriated." Landowners also argued that Ohio Power is not entitled to an irrebuttable presumption that the appropriation is necessary because the Siting Board only approved "the project" and not "the appropriation." Landowners reiterated their request to have the Burns and Bohlen petitions dismissed due to the invalid verification.

**{¶22}** The trial court adopted Ohio Power's findings of facts and conclusions of law. The trial court determined that it was not required to review the terms of the easements; that the Siting Board's certification of the necessity of the Project established an irrebuttable presumption that the appropriation is necessary under R.C. 163.09(B)(1)(c); that Ms. Rentschler's testimony that the appropriations were necessary established a rebuttable presumption that the appropriations were necessary under R.C. 163.09(B)(1)(b); and the Ohio Power Board's December 2019 resolution created a rebuttable presumption that the appropriations were necessary under R.C. 163.09(B)(1)(a).

**{¶23}** The trial court determined that even if the Siting Board's certificate did not create an irrebuttable presumption, the appropriations were necessary: "The public utility is in the best position to determine what is necessary to construct, operate and maintain an electric transmission line now and for many decades into the future" and Ohio Power testified that the easements do not go beyond what is necessary.

**{¶24}** The trial court also determined that Landowners' motion for judgment on the pleadings was untimely, and that even if considered on the merits, the defective verification of the December 2019 Board resolution was of no consequence because,

setting it aside, Ohio Power was entitled to an irrebuttable presumption of the necessity of the appropriation under R.C. 163.09(B)(1)(c) based on the Siting Board's certificate.

**{¶25}** Last, the trial court determined that Ohio Power's withdrawal of the distribution lines from the proposed easements was not an abandonment of the proceedings under R.C. 163.21. In sum, the trial court: (1) denied the motion for judgment on the pleadings, (2) determined that Ohio Power's withdrawal of distribution line rights from the easement was not an abandonment of the appropriation and ordered Ohio Power to modify the easements accordingly, and (3) determined that the easements were necessary for the Project.

**{¶26}** Landowners appealed.

## II. ASSIGNMENTS OF ERROR

**{¶27}** Landowners designate five assignments of error for review:

I. The trial court erred in denying the Landowners' motion for judgment on the pleadings. (Order, Conclusion of Law, ¶ 6.)[3]

II. The trial court erred in finding that an irrebuttable presumption applied to whether the permanent easement rights that Ohio Power sought to take were necessary. (Order, Conclusions of Law, ¶ 7)

III. The trial court erred in finding that a rebuttable presumption applied to whether the easement rights that Ohio Power sought to take were necessary based on the board resolution. (Order, Conclusions of Law, ¶ 4)

IV. The trial court erred in finding that Ohio Power met its burden of demonstration that the easement rights that Ohio Power sought to take were necessary. (Order, Conclusions of Law, ¶¶ 4, 5, 8)

V. The trial court erred in concluding that Ohio Power's last-minute decision to not seek distribution rights that it sought in its petition did not constitute an abandonment under R.C. 163.21 (Order, p. 1, Conclusions of Law, ¶ 9.)

---

[3] This assignment of error relates only to the Burns and Bohlen appeals.

### III. LEGAL ANALYSIS

#### A. Defective Verification of Petition under R.C. 163.05

#### 1. Standard of Review

**{¶28}** "Appellate courts conduct a de novo review of trial court decisions concerning Civ.R. 12(C) motions for judgment on the pleadings. Therefore, appellate courts independently review trial court decisions regarding a Civ.R. 12(C) motion for judgment on the pleadings." (Citations omitted.) *Leckrone v. Kimes Convalescent Ctr., __ Ohio App.3d __*, 2021-Ohio-556, 168 N.E.3d. 565, ¶ 7 (4th Dist.).

#### 2. Landowners' Civ.R. 12(C) Motion

**{¶29}** Landowners contend that the trial court erred in dismissing their motion for judgment on the pleadings because the verification of the petition was facially untrue and defective. Ms. Unternaher could not have sworn in October and November 2019 that the December 2019 Board Resolution was true and accurate because it issued after she made her verification. They contend that this error undermines the entire petition and renders the proceedings void. They also contend that the trial court erred when it determined that their motion was untimely under Civ.R. 12(C) because they argue that it was made prior to the jury trial on compensation under R.C. 163.14.

**{¶30}** Ohio Power argues that Landowners' motion was untimely because it was made in the middle of the necessity hearing, which they argue is a "trial" for purposes of Civ.R. 12(C). Ohio Power also argues that Ms. Unternaher's verification is not false because she never claimed in her verification that "she had reviewed the *final, signed* Board Resolutions before signing the verification." (Emphasis added.) Alternatively, Ohio Power argues that the statutory requirement in R.C. 163.05 to verify a petition has been

superseded by the Ohio Rules of Civil Procedure Rule 11, which states that pleadings need not be verified.

**{¶31}** As a preliminary matter, we find that Ohio Power's argument that no verification is required under Civ.R. 11 was not preserved on appeal. Ohio Power made the same argument to the trial court and the trial court implicitly rejected it. The trial court did not deny the motion on the ground that no verification was required. To the contrary, it presumed a verification was required and determined that the December 2019 Board resolution was irrelevant to the petition because the Siting Board's certificate was sufficient to establish the necessity of the appropriation. Ohio Power failed to assert a cross appeal challenging the trial court's determination and has forfeited the right to raise it now. App.R. 3(C) mandates that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross-appeal within the time allowed by App.R. 4." Ohio Power seeks to change the trial court's ruling concerning the verification requirement. Because this issue is not properly before the court, we need not address it. *See generally Automated Sols. Corp. v. Paragon Data Sys., Inc.,* 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008, ¶ 63 (8th Dist.).

**{¶32}** Even if the issue had been properly preserved, we reject Ohio Power's argument. R.C. 163.22 states that the proceedings brought under R.C. 163.01 to R.C. 163.22 are governed by the Rules of Civil Procedure. Thus, Civ.R. 11, which governs the signing of pleadings, motions and other documents generally applies to appropriation proceedings. However, R.C. 163.22 further states that procedural rules, like Civ.R. 11, apply "except as otherwise provided in those sections [163.01 to 163.22]." R.C. 163.05

and R.C. 163.08 require verification of the petition and the answer. Therefore, the portion of Civ.R. 11 that removes the verification requirement from pleadings is not applicable to appropriation proceedings. Bolstering this is Civ.R. 1, which states that "these rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to * * * the appropriation of property." Much of Civ.R. 11 is not clearly inapplicable (i.e., signature of one attorney of record, use of addresses, use of email address for electronic service, etc.), but the portion removing the verification requirement would be clearly inapplicable because it directly conflicts with the requirements of R.C. 163.05 and R.C. 163.08. Thus, even if the question were properly before us, we would find no error in the trial court's presumption that a verification is required. Moreover, the General Assembly amended R.C. 163.05 several times, most recently in 2007, and it amended R.C. 163.08 in 1981 to make Civ.R. 12 applicable, with limitations. It could have removed the verification requirement during these legislative amendments, but did not. *See Montgomery Cty. v. McQuary,* 26 Ohio Misc. 239, 240, 265 N.E.2d 812, 813 (C.P.1971*)* (Rules of Civil Procedure are applicable in appropriation actions unless the specific procedure conflicts with the Rules); *City of Bucyrus v. Strauch*, 3d Dist. Crawford No. 3-99-36, 2000-Ohio-1678, * 3 (rules are applicable unless a specific statutory procedure conflicts with the rules); *City of Middletown v. Campbell*, 21 Ohio App.3d 63, 64, 486 N.E.2d 208, 209–10 (12th Dist.1984) (discussing the 1981 amendment concerning Civ.R. 12).

{¶33} The trial court determined that the motion for judgment on the pleadings was not timely because it was made after Ohio Power had completed the presentation of its evidence at the hearing under R.C. 163.09. Under Civ.R. 12(C), motions for judgment on the pleadings must be made "after the pleadings are closed but within such times as

not to delay the trial* * *." The issue here is what constitutes the "trial" under Civ.R. 12(C): Is the hearing under R.C. 163.09(B) the "trial" or is the "trial" the jury trial on compensation under R.C. 163.14? This appears to be a case of first impression in Ohio.

{¶34} We find that the "trial" under Civ.R. 12(C) is the jury trial on compensation under R.C. 163.14 because the hearing under R.C. 163.09(B) may or may not be required, depending upon the owner's answer. An owner may file an answer to an appropriation petition. *See* R.C. 163.08. If the owner files an answer and denies any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation, then the court holds a hearing on those matters. *See* R.C. 163.09(B). After the R.C. 163.09(B) hearing, if the court determines those matters in favor of the agency, then the court sets a jury trial on compensation under R.C. 163.14. *See* R.C. 163.09(B)(2). However, if an answer is filed and none of the matters set forth in R.C. 163.09(B) is specifically denied, then the court sets a date for a jury trial on compensation under R.C. 163.14 – no R.C. 163.09(B) hearing is held. *See* R.C. 163.09(C).

{¶35} If, as the trial court determined here, the "trial" under Civ.R. 12(C) is the hearing under R.C. 163.09(B), it would result in disparate and unworkable outcomes depending upon the owner's answer. An owner who denied matters set forth in R.C. 163.09(B) would have a hearing and be required to file their motion for judgment on the pleadings prior to the hearing. Yet an owner who filed an answer and did not specifically deny those matters would not have a R.C. 163.09(B) hearing and thus would arguably have no deadline for filing its motion for judgment on the pleadings. However, if the "trial" under Civ.R. 12(C) were the jury trial on compensation under R.C. 163.14, then

regardless of how the owner answered, the deadline for filing the motion for judgment on the pleading would be the same – the jury trial on compensation. This is the more procedurally sound result and avoids the possibility of the trial court establishing inconsistent motion deadlines for different owners who file different answers where the deadline for one owner is the R.C. 163.09(B) hearing and the deadline for another is the R.C. 163.14 jury trial on compensation.

**{¶36}** The trial court erred when it determined that the Landowners' motion for judgment on the pleadings was untimely. Under Civ.R. 12(C), the "trial" is the jury trial on compensation. However, we find the error was harmless because the trial court denied the motion on the merits, finding that the verification "discrepancy" was inconsequential to its decision. Although we sustain the trial court's decision to deny the motion for judgment on the pleadings, we do so for different reasons.

**{¶37}** We disagree with both Ohio Power's characterization that "there is nothing at all 'false' " about the verification and with the trial court's finding that the verification was accurate. The petition states that a copy of the Ohio Power Board resolution "declaring the necessity for the appropriation is attached" and Ms. Unternaher's verification states that she was "duly cautioned and sworn" and "she has read the foregoing petition * * * and that the foregoing Petition is true and accurate to the best of her knowledge and belief." Yet the Board resolution "declaring the necessity for the appropriation" was not attached at the time Ms. Unternaher verified the petition because it had not occurred.

**{¶38}** *"Black's Law Dictionary* (9th Ed.2009) defines 'verification' as '[a] formal declaration made in the presence of an authorized officer, such as a notary public, or (in

some jurisdictions) under oath but not in the presence of such an officer, whereby one swears to the truth of the statements in the document.' Ohio practice customarily uses affidavits, which are factual statements sworn to before a notary public." (Brackets sic). *Henkel v. Aschinger*, 167 Ohio Misc.2d 4, 2012-Ohio-423, 962 N.E.2d 395, ¶ 39 (Franklin Cty. C.P.). *Henkel* involved a false verification of a shareholder derivative suit under Civ.R. 23.1. As here, the verification was premised in part on the review of a non-existent document. The trial court dismissed the action.  The court explained that the verification requirement is important because derivative actions "must not be filed casually. They put into motion demanding legal proceedings causing expense to defendants. They impose often urgent demands on a court." *Henkel v. Aschinger*, 167 Ohio Misc.2d 4, 2012-Ohio-423, 962 N.E.2d 395, ¶ 41.

{¶39} Like derivative actions, a petition for an appropriation imposes urgent demands on a court. The appropriation statute imposes shortened time requirements and limits the court's discretion to grant extensions of time. Most importantly, the petition sets into motion legal proceedings that take away constitutionally protected individual property rights.

> The rights related to property, i.e., to acquire, use, enjoy, and dispose of property, are among the most revered in our law and traditions. Indeed, property rights are integral aspects of our theory of democracy and notions of liberty.
>
> Believed to be derived fundamentally from a higher authority and natural law, property rights were so sacred that they could not be entrusted lightly to "the uncertain virtue of those who govern."

*Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34-35.

{¶40} We are concerned by Ohio Power's representations to the trial court in its post-hearing brief that it is routine practice for its affiants not to review exhibits attached

to its eminent domain petitions "given the ubiquity of this eminent domain process for AEP – routinely preparing, signing and filing eminent domain petitions and Board Resolutions across the many dozens of eminent domain cases it must file every year * * *." This cavalier approach to the verification requirement reflects a dulled sensitivity to the constitutional import of eminent domain proceedings. Although this may be Ohio Power's millionth appropriation, it is often the property owner's sole real estate asset. To the individual property owner, these cases often "represent more than a battle over a plot of cold sod * * * it is the taking of a home – the place where ancestors toiled, where families were raised, where memories were made." *Norwood* at ¶ 4.[4] Therefore, before initiating an appropriation action, Ohio Power's agent had a duty to carefully review the final version of the petition and any final, signed resolutions attached to it so that the verification required by R.C. 163.05 was a valid and truthful one. "When the state elects to take private property without the owner's consent, simple justice requires that the state proceed with due concern for the venerable rights it is preempting." *Norwood* at ¶ 68.

{¶41} Although Ohio Power's petitions against the Burnses and Bohlens fell short of this standard, under the circumstances of this case, we affirm the trial court's decision to deny the Landowners' motion for judgment on the pleadings, albeit for a different reason. At the hearing, Mr. Berkemeyer testified about the Board meeting and authenticated the December 2019 Board resolution as an Ohio Power business record. Ms. Rentschler also identified the December 2019 Board resolution during her testimony. Ohio Power successfully moved to admit the 2019 Board resolution into evidence. Thus,

---

[4] As Amicus Curiae Ohio Farm Bureau Federation explains, "For a farmer, losing his land, even a part of it, can be the equivalent of losing his home, his job, his family's history, and his children's future – all in one fell swoop. This is a pain that few people can even begin to comprehend."

even though Ms. Unternaher did not provide a valid verification of the petition as it related to matters concerning the 2019 Board resolution, Mr. Berkemeyer's testimony established that the Ohio Power Board passed the December 2019 resolution approving the Project and authenticated it.  Under R.C. 163.12(C), the trial court had discretion to sua sponte "amend any defect or informality in the proceedings under [R.C.]163.01 to [R.C.] 163.22" and deem any deficiency in the petition's verification cured by Mr. Berkemeyer's hearing testimony.

{¶42}  Alternatively, in response to the Landowners' motion for judgment on the pleadings, Ohio Power could have moved to amend its petition with a supplemental verification and the court could have granted it under Civ.R. 15. *See Peterson v. Teodosio,* 34 Ohio St.2d 161, 175, 297 N.E.2d 113, 122 (1973); *Sellers v. Williams,* 105 Ohio App. 332, 334,152 N.E.2d 299, 300 (4th Dist. 1957) (where there is no verification, the petition is dismissed; where there is a defective verification, the petition may be amended). Either way, we affirm, for different reasons, the trial court's denial of the Landowners' motion for judgment on the pleadings.

{¶43}  We overrule Landowners' first assignment of error.

B. The Presumptions in R.C. 163.09(B)(1) and the Role of the Court

{¶44}  Because the second, third, and fourth assignments of error are related we address them together.

1. Standard of Review

{¶45}  Landowners contend that the trial court erred in applying the three statutory presumptions in R.C. 163.09(B)(1)(a) through (c).   The interpretation and application of a statute is a matter of law that an appellate court reviews de novo. *State v. Schneider*,

4th Dist. Athens No. 19CA1, 2021-Ohio-653, ¶ 45; *State v. Blanton*, 2018-Ohio-1278, 110

N.E.3d 1, ¶ 50 (4th Dist.) ("When interpreting statutes and their application, an appellate

court conducts a de novo review, without deference to the trial court's determination").

Additionally, "we review the trial court's decision on the extent of the take *de novo*, without

any deference to the trial court's determination as it is an issue of law." (Italics sic.) *Ohio*

*Dept. of Natural Resources v. Thomas*, 2016-Ohio-8406, 79 N.E.3d 28, ¶ 46 (3d Dist.).

2. Legal Analysis

**{¶46}**  When an answer is filed, the appropriation provisions in R.C. 163.09 provide

for a hearing on:

> any of the matters related to the right to make the appropriation, the
> inability of the parties to agree, or the necessity for the appropriation * * *
> . [T]he burden of proof is upon the agency by a preponderance of the
> evidence except as follows:
>
> (a) A resolution or ordinance of the governing or controlling body, council,
> or board of the agency declaring the necessity for the appropriation creates
> a rebuttable presumption of the necessity for the appropriation if the agency
> is not appropriating the property because it is a blighted parcel or part of a
> blighted area or slum.
>
> (b) The presentation by a public utility or common carrier of evidence of the
> necessity for the appropriation creates a rebuttable presumption of the
> necessity for the appropriation.
>
> (c) Approval by a state or federal regulatory authority of an appropriation by
> a public utility or common carrier creates an irrebuttable presumption of the
> necessity for the appropriation.

We explained the effect of a presumption on the burden of proof:

> [A] presumption shifts the evidentiary burden of producing
> evidence, *i.e.,* the burden of going forward, to the party against whom the
> presumption is directed; it does not effect the burden of proof, which
> remains the same throughout the case. Moreover, a rebuttable presumption
> does not carry forward as evidence once the opposing party has rebutted
> the presumed fact. Thus, once the presumption is met with sufficient
> countervailing evidence, it fails and serves no further evidentiary purpose.

> We have previously characterized the effect of rebutting the presumption as "bursting the bubble," with the case then proceeding as if the presumption had never arisen. (Citations omitted.)

*Horsley v. Essman*, 145 Ohio App.3d 438, 444, 2001-Ohio-2557, 763 N.E.2d 245, 249 (4th Dist.); *see also Hoyle v. DTJ Ent., Inc.,* 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122, ¶ 24.

a. The Ohio Power Siting Board and Ohio Power Board of Directors Approvals

**{¶47}** The Landowners contend that the Siting Board, a state regulatory authority, and the Ohio Power Board, the board of the agency, approved the *Project*, not the *appropriation* (i.e., the proposed easements from each Landowner). Therefore, the irrebuttable and rebuttable presumptions in R.C. 163.09(B)(1)(a) and (c) are inapplicable.

**{¶48}** Ohio Power concedes that neither the Siting Board nor the Ohio Power Board reviewed or approved the specific appropriations involved in this case (i.e., the proposed easements or their terms). Ms. Rentschler testified that the Siting Board did not have the easement documents, did not analyze or make any decisions about the easements, and did not approve the appropriation of easements from the Landowners. Mr. Berkemeyer testified that the Ohio Power Board resolution recognized the necessity of acquiring easements, rights of way, or fee titles by eminent domain, but the Ohio Power Board did not consider the appropriation of specific easements and delegates that authority to the officers, engineers and agents of Ohio Power. The Ohio Power Board did not review the easement terms, did not know who the Landowners are, and did not know what rights are being sought from the Landowners.

**{¶49}** Nevertheless, Ohio Power argues that because the Siting Board and the Ohio Power Board found that the Project was necessary, it creates an irrebuttable and

rebuttable presumption, respectively, of the necessity for the appropriations under R.C. 163.09(B)(1)(a) and (c). Ohio Power argues that "[t]his should be the end of the necessity challenge," "a review of the easements is not required."  Although Ohio Power argues that there should be no judicial review of its proposed easements, it claims that it does not "have 'carte blanche' to appropriate any easements it wishes without review" because "the scope of the easements will be reviewed by the jury at the compensation hearing." In other words, Ohio Power argues that it can take whatever property rights it wants and could even appropriate fee simple titles from the Landowners, restrained only by how much the jury decides it must compensate for the taking.

{¶50} The trial court found that Ohio Power was entitled to an irrebuttable presumption of the necessity for the appropriation under R.C. 163.09(B)(1)(c) based on the Siting Board conclusion "that the Project will 'serve the public interest, convenience, and necessity.' "  It found that Ohio Power was entitled to a rebuttable presumption of the necessity for the appropriation under R.C. 163.09(B)(1)(a) "because its Board of Directors declared the necessity for the appropriation of easements across each property in its Board Resolutions dated December 11, 2019."

{¶51} "Courts shall apply heightened scrutiny when reviewing statutes that regulate the use of eminent-domain powers." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, syllabus ¶ 3. The appropriation provisions of R.C. 163.01 et seq. "are strictly construed against the governmental agency." *State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, 2020-Ohio-276, 143 N.E.3d 614, ¶ 20 (5th Dist.). R.C. 163.09(B) states that the presumptions apply where the board of the agency or the state regulatory authority approves the appropriation.  The appropriations

in these consolidated cases are the four proposed easements.  The irrefutable evidence is that the Siting Board and the Ohio Power Board did not review or approve the easements sought from the Landowners. Thus, the trial court erred in applying the irrebuttable presumption of the necessity for the proposed easements. The Siting Board made no findings about the appropriations at issue here. Because the Siting Board did not approve these appropriations, Ohio Power was not entitled to the irrebuttable presumption of the necessity for the proposed easements under R.C. 163.09(B)(1)(c).[5]

**{¶52}** Likewise, the Ohio Power Board resolution did not approve the appropriations sought from the Landowners. The Board resolution broadly recognized "the necessity of acquiring easements or rights of way in connection with" the Project and "for the acquisition of said easements or rights of way or fee title by eminent domain or otherwise."  But the resolution delegates authority to Ohio Power's officers, engineers, and agents to determine the appropriation of property rights and defers to their judgment on matters related to such appropriation: "The officers, engineers, and agents of the Company are authorized and directed to take such action *as in their judgment is necessary* in connection with the filing and handling of any condemnation case for the acquisition of the Property Interests," with "Property Interests" defined as "easements, rights of way, and/or fee title." (Emphasis added.) The Ohio Power Board did not review or approve the appropriations sought from the Landowners. Ohio Power was not entitled to a rebuttable presumption that the proposed easements were necessary under R.C. 163.09(B)(1)(a).

---

[5] We find R.C. 163.09(B)(1)(c) inapplicable and the constitutionality of it is not before us. *See Norwood* at ¶ 136, fn. 16 recognizing "significant questions about the validity of the presumptions in favor of the state that is set forth in R.C. 163.09(B) * * *."

{¶53}  The trial court erred in applying the irrebuttable and rebuttable presumptions in R.C. 163.09(B)(1)(a) and (c). We sustain Landowners' second and third assignments of error.

b. The Deference to a Public Utility

{¶54}  Landowners also contend that the trial court erred in finding that Ohio Power met its burden of demonstrating that the easement rights were necessary because the trial court failed to engage in a critical review of the specific easements. Instead, the trial court deferred the issue of necessity to Ohio Power and deferred review of the scope of the easements to the jury at the future compensation hearing. Ohio Power argues that the trial court should not and, in this instance, did not review the extent of the taking (i.e., the terms of the easements) because Ohio Power "is in the best position to determine what is necessary." Instead, Ohio Power contends that the scope of the easements will be reviewed at the compensation hearing and the Landowners "will be compensated for whatever easements rights are acquired" by Ohio Power. Again, Ohio Power reiterates its position that it alone can determine the extent of an appropriation, presumably even taking a fee simple title in the Landowners' properties, constrained only by Ohio Power's financial ability to compensate the Landowners accordingly.

{¶55}  "We think that the power of the state is not so great, nor the plight of the citizen so helpless." *Jackson v. State*, 213 N.Y. 34, 35, 106 N.E. 758 (1914) (Cardozo, J.). The trial court erred when it did not review each of the challenged easement terms and make a separate necessity finding. The court summarily stated that it was "persuaded by Ms. Rentschler's testimony that all of the terms of the proposed Easements are necessary." The trial court also summarily, and with an "artificial judicial deference"

criticized in *Norwood* at ¶ 61, found, "The public utility is in the best position to determine what is necessary * * * now and for many decades into the future * * *." Finally, the trial court determined, "Any argument concerning the extent of the take will be heard as part of [Landowners'] alleged damages and just compensation at the compensation trials."

**{¶56}** We find that the trial court failed to engage in the scope of review of the proposed easements required under *Norwood* and R.C. 163.09(B), which requires the trial court to review any matters related to the right to make the appropriation and the necessity of it. "[D]eferential review is not satisfied by superficial scrutiny." (Brackets added.) *Norwood* at ¶ 66. The trial court's role "requires vigilance in reviewing state court actions for the necessary restraint," which includes: (1) ensuring that the scope of the take is narrow so that "the state takes no more than that necessary" for the public use; and that the state (2) "proceeds fairly;" (3) "without bad faith;" (4) without "pretext;" (5) without "discrimination;" and (6) without "improper purpose." *Norwood* at ¶ 69.

> The scrutiny by the courts in appropriation cases is limited in scope, but it clearly remains a critical constitutional component. * * * [I]t is for the courts to ensure that the legislature's exercise of power is not beyond the scope of its authority, and that the power is not abused by irregular or oppressive use, or use in bad faith. And when the authority is delegated to another, the courts must ensure that the grant of authority is construed strictly and that any doubt over the propriety of the taking is resolved in favor of the property owner.
>
> A court's independence is critical, particularly when the authority for the taking is delegated to another or the contemplated public use is dependent on a private entity. In such cases, the courts must ensure that the grant of authority is construed strictly and that any doubt over the propriety of the taking is resolved in favor of the property owner. (Citations omitted.)

*Norwood* at ¶ 70 -71.

**{¶57}** The trial court erred in deferring to Ohio Power's assessment of the necessity of the easements and in finding that the extent of the take was a factual question

for the jury at the compensation trial. " '[T]he scope of the appropriation' is a matter for the trial court to determine." *Wray v. Wessell*, 4th Dist. Scioto Nos. 15CA3724, 15CA3725, 2016-Ohio-8584, ¶ 44. It is the trial court's duty "to define the extent of 'the taking' and the jury's duty to determine the amount of the damages as a result of 'the taking.' " *Wray v. Fitch,* 95 Ohio App.3d 249, 253, 642 N.E.2d 63, 65 (9th Dist. 1994), *citing Masheter v. Boehm,* 37 Ohio St.2d 68, 307 N.E.2d 533, syllabus at ¶ 3 (1974) (the extent of the taking is a question of law to be decided by the trial court before submitting the question of valuation to the jury); *Octa v. Octa Retail, LLC,* 12th Dist. Fayette No. CA2007-04-015, 2008-Ohio-4505, ¶ 43 (the trial court determines at a R.C. 163.09(B) hearing "whether the entire appropriation was necessary; specifically whether the amount taken was excessive"); *Ohio Power Co. v. Duff*, 12th Dist. Madison No. CA2020-01-004, 2020-Ohio-4628, ¶ 35 ("breadth of easement" was a factor reviewed by trial court at a R.C. 163.09(B) hearing).

**{¶58}** The need for the trial court to engage in a vigilant review to ensure that the appropriation is narrow and that Ohio Power is acting fairly and not taking more than necessary is particularly true here where Ohio Power admitted: (1) it uses two or three different easement forms with narrower or broader terms based – *not on necessity* – but on whether they are negotiating or litigating, and who the property owners' attorneys are, (2) until recently included broad easement terms that did not limit the kilovoltage transmitted over the easements, and (3) conceded at the hearing it did not need distribution line rights and "could negotiate" the anti-abandonment provision.

**{¶59}** The trial court erred when it: (1) applied the presumptions under R.C. 163.09(B)(1)(a) through (c); (2) failed to resolve any doubt over the propriety of the

easements in favor of the Landowners; and (3) improperly deferred to Ohio Power and the future jury trial on the necessity and extent of the easements. We sustain Landowners' fourth assignment of error and remand this cause for a new hearing. On remand, the trial court should hold a R.C. 163.09(B) hearing to determine whether the specifically contested terms of the easements are necessary. Because the trial court did not review and determine the necessity of the easement terms individually, we will not engage in a review of them for the first time on appeal. Thus, for example, the parties' arguments concerning whether the herbicide provision is necessary is a matter for the trial court's consideration on remand. *See generally Ohio Power Co. v. Clifton Bros. Land LLC, et al.,* Pickaway C.P. No. 2019-CI-0194 (Mar. 2, 2020).

### c. Abandonment Under R.C. 163.21(A)

**{¶60}** In their final assignment of error, Landowners contend that the trial court erred in determining that the Landowners' abandonment protections were not triggered under R.C. 163.21(A) when Ohio Power abandoned its appropriation of an easement for the right to install distribution lines across their properties. Ohio Power argues that to trigger the protections of R.C. 163.21(A), it would have "to drop entirely" its appropriation petition. The trial court determined that removing "the word 'distribution' from its proposed Easements" did not constitute an abandonment under the statute.

**{¶61}** R.C. 163.21(A) provides:

(A)(1) If it has not taken possession of property that is appropriated, an agency may abandon appropriation proceedings under sections 163.01 to 163.22 of the Revised Code at any time after the proceedings are commenced but not later than ninety days after the final determination of the cause.

(2) In all cases of abandonment as described in division (A)(1) of this section, the court shall enter a judgment against the agency for costs, including jury fees, and shall enter a judgment in favor of each affected

owner, in amounts that the court considers to be just, for each of the following that the owner incurred:

(a) Witness fees, including expert witness fees;

(b) Attorney's fees;

(c) Other actual expenses.

{¶62} Ohio Power included an appropriation of distribution line rights in its petitions. When the Landowners' answers challenged these distribution rights as exceeding the scope required for the Project, Ohio Power responded with a pre-hearing brief filed just three days before the hearing in which Ohio Power reiterated its position that the appropriation of rights for distribution lines allowed it to meet its obligations to the public and were necessary for the Project.

{¶63} Three days later at the hearing, Ms. Rentschler testified that distribution lines service homes and businesses and are different, separate lines that are "positioned differently on the pole." Earlier in the Project's phase, Ohio Power did not fully know whether distribution plans would be part of the Project, so it included the right to install them in the easement. However, Ms. Rentschler conceded that Ohio Power did not need distribution lines or the right to carry them over the Landowners' properties and was willing to concede this right and remove it from the petitions. In its post-hearing order, the trial court ordered Ohio Power to remove the rights to install distribution lines from the Landowners' easements.[6]

{¶64} We agree with Landowners that their right to exclude distribution lines across the Landowners' properties is a separate "stick" in the bundle of property rights.

---

[6] The trial court's order and Ohio Power's brief reference an off-the-record discussion concerning the distribution line rights. The discussion is not part of the record and a statement of it was not made part of the record under App.R. 9. As such, we do not consider it in determining the merits of the appeal. *See* App.R. 12.

*State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, 146 N.E.3d

545, ¶ 24.

> The right to exclude is "one of the most treasured" rights of property ownership. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). According to Blackstone, the very idea of property entails "that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe." 2 W. Blackstone, Commentaries on the Laws of England 2 (1766). In less exuberant terms, we have stated that the right to exclude is "universally held to be a fundamental element of the property right," and is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–180, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); see *Dolan v. City of Tigard*, 512 U.S. 374, 384, 393, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); see also Merrill, Property and the Right to Exclude, 77 Neb. L. Rev. 730 (1998) (calling the right to exclude the "sine qua non" of property).

*Cedar Point Nursery v. Hassid*, __ U.S. __,141 S.Ct. 2063, 2072-2073, __ L.Ed.2d __

(2021).  Ohio Power conceded the distribution rights at the hearing. In essence, Ohio

Power admitted that its easement was broader in scope than necessary and that the

distribution rights were unnecessary for the Project.  Ohio Power's witness on the stand:

> Q. Well, in fact, you only offered to remove it from your easement documents after the landowners challenged the necessity of the easement. Correct?
>
> A. That's correct.

{¶65} Both Landowners and Ohio Power cite cases that are procedurally

distinguishable. Here Landowners successfully challenged the scope of the easement at

the hearing, resulting in an order from the trial court that removed the distribution line

rights from the easements.  In the cases cited by the parties, the petitioner either filed an

amended petition modifying the appropriation petition before the trial court made a

determination concerning the scope of the appropriation or the petitioner filed a notice of abandonment.

**{¶66}** For example, in *Dublin v. Wirchanski, infra,* the City of Dublin filed an appropriation petition for three parcels, then filed "a notice of partial abandonment" as to two of the three properties. *Dublin v. Wirchanski,* 3d Dist. Union No. 14-10-22, 2011-Ohio-2461, ¶ 8. The trial court determined that Dublin's notice of partial abandonment was a motion for leave to amend its petition. It rejected the argument that Dublin had to dismiss and refile, and found that, " '[a]lthough R.C. 163.21 may under certain circumstances authorize the abandonment of an appropriation proceeding, once a Complaint has been filed, R.C. 163.21 does not operate in isolation. The City's Notice of Partial Abandonment can be viewed as an amendment to the Complaint and thereby within the purview of Civil Rule 15.' " *Dublin* at ¶ 15.

**{¶67}** The appellate court decided that it was irrelevant whether Dublin's pleading could be treated as an amended petition or whether it had to dismiss the entire petition, because Dublin had taken possession of the property it wanted to abandon and therefore could neither abandon the appropriation proceeding under R.C. 163.21 nor amend its complaint. Then, in dicta, the appellate court discussed the application of Civ.R. 15 in appropriation proceedings, noted that other courts have allowed petitioners to amend their petitions under Civ.R. 15(A) under somewhat analogous situations, and concluded that Dublin's pleading could be treated as a motion to amend:

> First of all, we believe that the trial court did not err in treating Dublin's pleading as a motion for leave to amend its complaint. Here, while Dublin originally requested to appropriate Parcels 71–WD, 91–WL, and 92–WL, it later requested to abandon Parcels 91–WL and 92–WL and to continue the appropriation and subsequent valuation of Parcel 71–WD. Thus, it essentially was asking the trial court to allow it to amend its original

appropriation complaint to only include Parcel 71–WD. Pursuant to Civ.R. 15(A), after responsive pleadings have been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party," and according to the rules, "[l]eave of court shall be freely given when justice so requires." Civ.R. 15(A). As the Ohio Supreme Court has recognized, the proper way for a plaintiff to dismiss fewer than all claims against a defendant is to amend the complaint pursuant to Civ.R. 15(A). *Pattison v. W.W. Grainger, Inc.,* 120 Ohio St.3d 142, 2008–Ohio–5276, 897 N.E.2d 126, at ¶ 19. Other courts have approved of Civ.R. 15's application in appropriation proceedings: *Madison Cty. Bd. of Commrs. v. Bell,* 12th Dist. No. CA2005–09–036, 2007–Ohio–1373, ¶ ¶ 79–82 (finding no prejudicial error in the trial court's decision granting the board of commissioners leave to amend its complaint; the original complaint sought a fee simple interest in the property, and was amended to request only an easement); *Dorsey v. Donohoo* (1992), 83 Ohio App.3d 415, 421–23, 615 N.E.2d 239  (finding no error in allowing the board of county commissioners to amend its appropriation petition to add an easement for ingress and egress on the landowner's property); *Montgomery County v. McQuary* (1971), 26 Ohio Misc. 239, 239–42, 265 N.E.2d 812 (finding that Civ.R. 15(A) applied to appropriation proceedings, but that the amended complaint brought into consideration R.C.163.21).

*Id.* at ¶ 16.

{¶68} The Third District held that "regardless of whether a party may amend its appropriation complaint, like the trial court allowed Dublin to do in this case, or whether a party must voluntarily dismiss its entire appropriation proceedings, *any* attempted change to the underlying appropriation action automatically triggers R.C. 163.21 considerations and must be dealt with first." (Emphasis sic.) *Id.* at ¶ 17. Because the trial court properly determined that Dublin took possession of the property, it could not abandon it regardless of whether the procedure used to attempt the abandonment was an amendment or a dismissal and refiling.  *Id.* at ¶ 19 ("if Dublin had taken possession of Parcel 91–WL then it could not 'abandon' its appropriation proceedings as to that parcel, regardless of whether Dublin had to voluntarily dismiss its entire action or could amend its appropriation complaint to exclude Parcels 91–WL and 92–WL").

**{¶69}** Ohio Power did not file a prehearing motion to amend its petition to remove the distribution rights from the appropriation petition, nor did it file a notice of abandonment. To the contrary, in a brief filed three days before the hearing, Ohio Power argued its distribution line easements were necessary. In response to the Landowners' challenge, Ohio Power ultimately conceded this argument to the Landowners at the hearing and agreed to the removal of the distribution rights from the easement, which the trial court subsequently ordered Ohio Power to do. Therefore, this case does not fit within the procedural context of R.C. 163.21(A), where a voluntary abandonment (either via a notice or via an amended petition) occurs. Instead, the proper context is R.C. 163.21(B) because the trial court determined at the R.C. 163.09(B) hearing – after Ohio Power admitted during direct and cross examination – that Ohio Power was not entitled to appropriate that "particular property" right (i.e. distribution line easements). "An agency cannot abandon a cause that it has already lost." *Ohio Edison Co. v. Franklin Paper Co.*, 18 Ohio St.3d 15, 18, 479 N.E.2d 843, 845 (1985).

**{¶70}** Under R.C. 163.21(B):

(B)(1) In appropriation proceedings under sections 163.01 to 163.22 [which encompasses the R.C. 163.09(B) hearing] * * * if the court determines that an agency is not entitled to appropriate particular property, the court shall enter both of the following:

(a) A judgment against the agency for costs, including jury fees;

(b) A judgment in favor of each affected owner, in amounts that the court considers to be just, for the owner's reasonable disbursements and expenses, to include witness fees, attorney's fees, appraisal and engineering fees, and for other actual expense that the owner incurred in connection with the proceedings.

{¶71} R.C. 163.21(A) and (B) must be read in context with R.C. 163.09(G) and the appropriation scheme, R.C. 163.01 et seq. Three types of situations are addressed: (1) an agency's voluntary abandonment of "appropriation proceedings" under R.C. 163.21(A); (2) the trial court's determination that the appropriation is not necessary or not for public use under R.C. 163.09(G); and (3) the trial court's determination during any phase of the proceedings that the agency is not entitled to appropriate "particular property" under R.C. 163.21(B).

{¶72} Under the first scenario, because we determined that Ohio Power did not voluntarily abandon the distribution line rights, we need not determine whether R.C. 163.21(A) allows a partial abandonment of property (i.e. the abandonment of the right to install distribution lines while maintaining appropriation proceedings to obtain other property rights). *See Dublin* at ¶ 29-36, (Rogers, P.J. concurrence, finding "[n]othing in the language used in [R.C. 163.21(A)] suggests that an agency may abandon one part of the proceedings, while continuing with other portions").

{¶73} Under the second scenario, because the trial court did not determine that the entire appropriation proceedings were not for the public use or not necessary (i.e., the agency did not lose the case entirely at the R.C. 163.09(B) hearing stage), R.C. 163.09(G) is inapplicable. That subsection provides:

> (G) If the court determines the matter in the favor of the owner as to the necessity of the appropriation or whether the use for which the agency seeks to appropriate the property is a public use, in a final, unappealable order, the court shall award the owner reasonable attorney's fees, expenses, and costs.

We interpret this subsection to apply when the agency has failed to establish its case as a whole, resulting in the dismissal of the entire proceeding. *See generally Canton v. Irwin*,

5th Dist. Stark No. 2011CA00029, 2012-Ohio-344, ¶ 30 ("we find that R.C.163.09(G) is a statute intended to make the landowner whole. In a case in which the court finds that the appropriation was not necessary or that the use is not a public use, the landowner is entitled to recover the costs, fees and expenses he or she had to incur in order to defend against the taking"); *State ex rel. New Wen, Inc. v. Marchbanks,* 163 Ohio St.3d 14, 2020-Ohio-4865, 167 N.E.3d 934 (generally discussing the provisions in Chapter 163 awarding attorney's fees and expenses and comparing them with federal law). The use of the term "the matter" in subpart (G) ("the court determines the matter") rather than using the phrase, "on any of the matters" as used in R.C. 163.09(B)(2) ("An order of the court against the agency on any of the matters") indicates that R.C. 163.09(G) refers to the dismissal of the entire case and requires the court to award the owner reasonable attorney's fees, expenses, and costs. In comparison, R.C. 163.09(G) does not give the trial court the same flexibility provided in R.C. 163.21(B) to determine a "just" amount for "each affected owner" when "particular property" rights are not necessary. And, subpart (G) instructs the trial court to issue "a final, unappealable order" which we construe as referring an order awarding attorney's fees, expenses and costs upon the dismissal of the entire proceeding.

{¶74} However, the third scenario, R.C. 163.21(B), is applicable here. R.C. 163.05 allows the agency to bring an appropriation action for a single parcel, multiple contiguous parcels, or interest or rights in single or multiple parcels. R.C. 163.09(E) allows the trial court, with parties' consent, to consolidate cases. Therefore, the appropriation proceedings may include a number of different parcels, property rights, interests, and owners. R.C. 163.21(B) recognizes that different properties and property rights will be

contested and provides that if the trial court "determines that an agency is not entitled to appropriate *particular property*," – such as distribution line rights in an easement – then it shall award costs and reasonable disbursements and expenses. *See generally Marchbanks*, *supra*, (recognizing that R.C. 163.21(B)(1) provides for the award of attorney fees when an appropriation does not occur). Furthermore, R.C. 163.21 is a remedial law and is to be " 'liberally construed in order to promote [its] object and assist the parties in obtaining justice.' " (Brackets sic.) *Metro, Southwest Ohio Regional Transit Auth. v. Capozzolo,* 154 Ohio App.3d 156, 2003-Ohio-4696, 796 N.E.2d 583, ¶ 19 (1st Dist.), quoting R.C. 1.11. A liberal construction of R.C. 163.21(B) dictates that property owners who successfully defend against the appropriation of one of the "sticks" in the bundle of constitutionally protected property rights should be allowed to recover their expenses associated with defending that right.[7]

**{¶75}** And, R.C. 163.21(B) recognizes that different owners may be affected differently and gives the trial court discretion to award "each affected owner" of the "particular property" reasonable disbursements and expenses "as the court considers just." We find that R.C. 163.21(B) provides a trial court flexibility and addresses the situation here, where the trial court found that the easements were overbroad and Ohio Power took more than was necessary; the scope of the easement exceeded that required for the Project because distribution line rights were not required. Here, the judgment that the easement was overbroad affected all of the owners in this consolidated case, but R.C.

---

[7] Even if we assume R.C. 163.09(G) applies here, the main difference between an award under subpart (G) and an award under R.C. 163.21(B) is the level of discretion afforded the trial court.

163.21(B) recognizes that there may be situations where only some of the owners are affected and allows the court to award expense it considers just in such circumstances.

{¶76} Here the trial court determined that Ohio Power was not entitled to appropriate the distribution line rights and ordered them removed from the easements' terms. Therefore, it should have awarded costs associated with the hearing against the agency and considered an amount it deemed just that the owners incurred "in connection with the proceedings." Though we find that the trial court did not err when it determined that Ohio Power did not abandon the distribution line rights, we sustain Landowners' fifth assignment of error for different reasons. The trial court erred when it did not give the Landowners consideration of a just award of reasonable disbursements and expenses under R.C. 163.21(B) as to the distribution line rights that were decided against Ohio Power, which the Landowners incurred to protect their constitutionally protected property rights.

IV. CONCLUSION

{¶77} The trial court did not err when it denied the Landowners' motion for judgment on the pleadings. However, the trial court erred when it applied the presumptions in R.C. 163.09(B)(1)(a) through (c) and improperly deferred to Ohio Power in determining necessity of the appropriations. Additionally, after determining that Ohio Power was not entitled to appropriate the distribution line property rights, the trial court erred in failing to award costs to the Landowners and in failing to determine a just amount for disbursements and expenses related to the Landowners' efforts in defending against the appropriation of the distribution line rights. We affirm, in part, and reverse, in part, the

judgment of the trial court and remand for a R.C. 163.09(B) hearing and subsequent proceedings.

JUDGMENT AFFIRMED IN
PART & REVERSED IN PART.
CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, CAUSE REMANDED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
     Michael D. Hess, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**