[Cite as *Ohio Power Co. v. Burns*, 2024-Ohio-3364.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Ohio Power Company, | : | Case Nos.  23CA23, 23CA24, 23CA25, 23CA26 |
| Plaintiff-Appellee, | | |
| | : | |
| v. | | DECISION AND |
| | : | JUDGMENT ENTRY |
| Michael Burns, et al., | | |
| | : | |
| Defendants-Appellants. | | **RELEASED 8/28/2024** |
| | : | |

APPEARANCES:

Joseph R. Miller, Thomas Fusonie, John M. Kuhl, Kara M. Mundy, Vorys, Sater, Seymour and Pease LLP, Columbus, Ohio for Defendants-Appellants.

Ryan P. Sherman, Christopher J. Baronzzi, Jason T. Gerken, Syed Ahmadul Huda, Porter Wright Morris & Arthur LLP, Columbus, Ohio for Plaintiff-Appellee.

Hess, J.

{¶1} Defendants-Appellants Michael and Misty Burns, Ronald and Barbara Bohlen, Jeffrey and Holly Dexter, and Ryan and Denay May ("Landowners") own property over which Plaintiff-Appellee Ohio Power Company seeks to take easements by eminent domain. Following the trial court's necessity hearing, the Landowners appealed and we determined, among other things, that Ohio Power was entitled to neither a rebuttable nor an irrebuttable presumption of the necessity of the appropriation under R.C. 163.09(B)(1)(a) or (c) and that the trial court conducted an inadequate review of the evidence and erred in finding that the extent of the take was a factual question for the jury. We also found that the Landowners were entitled to certain attorney fees. However, we found that the applicable attorney fee provision was R.C. 163.21(B), rather than R.C.

163.21(A), because the trial court ordered Ohio Power to remove the distribution line easement term after Ohio Power admitted it was not necessary, not because Ohio Power had abandoned the appropriation proceedings. *Ohio Power Company v. Burns,* 2021-Ohio-2714 (4th Dist.).

{¶2}    Ohio Power appealed to the Supreme Court of Ohio, which in large part affirmed our decision, except that it reversed our determination that the Landowners were entitled to attorney fees under R.C. 163.21(B) on procedural grounds, not substantive grounds, because the Court found that the Landowners had waived that argument in its appeal. The Court also determined that the trial court errors occurred after the necessity hearing, therefore on remand rather than requiring a second necessity hearing,[1] the Court remanded it "to the trial court for it to analyze whether each appropriation (i.e., each proposed easement term) is necessary" based upon the evidence that Ohio Power had previously presented. *Ohio Power Company v. Burns*, 2022-Ohio-4713, ¶ 42.

{¶3}    Upon remand, the trial court issued a post-remand order in which it reviewed the transcript of the necessity hearing and found that Ohio Power had presented evidence that all the challenged easement terms were necessary, except the distribution lines term, which it found to be a moot issue. The Landowners appealed.

{¶4}    The Landowners collectively raise two assignments of error for our review. They contend that the trial court erred (1) by failing to conduct a property-specific review of each of the challenged easements and (2) by finding that Ohio Power met its burden of proof to show necessity for six of the various proposed easement terms.

---

[1] A second hearing would have afforded Ohio Power an opportunity to submit additional evidence of the necessity of each of the proposed easement terms for the individual Landowners. Ohio Power's erroneous belief that (1) "appropriation" meant the "project" and not the individual easement terms and (2) it was entitled to an irrebuttable presumption appeared to have influenced its presentation of evidence.

**{¶5}** We find that the trial court was required to and did in fact conduct a property-specific review of each of the challenged easements therefore we overrule Landowners first assignment of error. We find that the trial court's findings that the right to construct term, the access route term, and the Tree Protection Zone term were necessary were supported by some competent and credible evidence. We overrule Landowners' second assignment of error as it concerns those three terms. However, we find that the trial court's findings that the herbicide vegetation control term was necessary was not supported by competent and credible evidence and the anti-abandonment term and the distribution lines term findings were erroneous as a matter of law. We sustain Landowners' second assignment of error as it concerns those three terms.

**{¶6}** We affirm, in part, and reverse, in part, the trial court's judgment and remand the cause for further proceedings consistent with the decision herein. Specifically, for the trial court to enter findings on the herbicide term, the anti-abandonment term, and the distribution lines term consistent with this decision.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

**{¶7}** In 2017, the Ohio Power Board of Directors gave initial approval for a project in Marietta, Ohio to enhance the reliability of the electric transmission network. The Board of Directors determined that the existing 23kV network was not strong enough to support the load, was obsolete, and should be replaced with a 138kV network. The project, known as "The Bell Ridge-Devola 138kV Transmission Line Project," (the "Project") included approximately 10 miles of new 138kV transmission lines and required siting, rights of way, and property purchases. In August 2018, the Ohio Power Siting Board ("Siting Board")

---

[2] The facts and procedural background are abbreviated and taken from a more detailed recitation in *Ohio Power Company v. Burns*, 2021-Ohio-2714 (4th Dist.).

issued a certificate of environmental compatibility and public need for the Project. The Ohio Power Board of Directors issued a December 2019 resolution approving the Project.

{¶8}    Ohio Power filed petitions for appropriation against Landowners in 2020 to take easements on their property after efforts to negotiate easements failed. Landowners filed answers in which they denied that the easements were necessary and denied that the Siting Board's August 2018 certificate declared the appropriation a necessity.

{¶9}    The trial court held a consolidated hearing under R.C. 163.09 to determine any matters relating to: (1) the right to make the appropriation of the easement rights, (2) the inability of the parties to agree, or (3) the necessity for the appropriation of the easement rights.  Following the hearing, the trial court determined that it was not required to review the terms of the easements; that the Siting Board's certification of the necessity of the Project established an irrebuttable presumption that the appropriation of the easement rights  was necessary under R.C. 163.09(B)(1)(c); that Ohio Power presented testimony that the appropriations were necessary, which established a rebuttable presumption that the appropriations were necessary under R.C. 163.09(B)(1)(b); and the Ohio Power Board's December 2019 resolution created a rebuttable presumption that the appropriations were necessary under R.C. 163.09(B)(1)(a). The trial court determined that even if the Siting Board's certificate did not create an irrebuttable presumption, the appropriations were necessary: "The public utility is in the best position to determine what is necessary to construct, operate and maintain an electric transmission line now and for many decades into the future" and Ohio Power testified that the easements do not go beyond what is necessary.

{¶10} However, the trial court ordered Ohio Power to remove the distribution line easement from the appropriation. Ohio Power had initially included an appropriation of distribution line rights in its petitions. When the Landowners' answers challenged these distribution rights as exceeding the scope required for the Project, Ohio Power responded with a pre-hearing brief filed just three days before the hearing in which Ohio Power reiterated its position that the appropriation of rights for distribution lines allowed it to meet its obligations to the public and were necessary for the Project.

{¶11} Three days later at the hearing, Ohio Power presented the testimony of Kelly Rentschler, a senior transmission right-of-way agent, who testified that distribution lines service homes and businesses and are different, separate lines that are "positioned differently on the pole." Earlier in the Project's phase, Ohio Power did not fully know whether distribution plans would be part of the Project, so it included the right to install them in the easement. However, Rentschler conceded that Ohio Power did not need distribution lines or the right to carry them over the Landowners' property and was willing to concede this right and remove it from the petitions. In its post-hearing order, the trial court ordered Ohio Power to remove the rights to install distribution lines from the Landowners' easements.

{¶12} Landowners appealed. We determined that the "trial court erred in applying the irrebuttable and rebuttable presumptions in R.C. 163.09(B)(1)(a) and (c)." *Ohio Power Company v. Burns,* 2021-Ohio-2714, ¶ 53 (4th Dist.). We also found that the trial court failed to engage in the scope of review required by law and in finding that the extent of the take was a question for the jury. *Id.* at ¶ 56-57. Finally, we found that Ohio Power had not "abandoned" the appropriation proceedings for distribution lines term; but rather, in

response to the Landowners' challenges and cross-examination at the necessity hearing, Ohio Power had conceded that these easements were unnecessary and that it was not entitled to appropriate that particular property. *Id.* at ¶ 74-75. Thus, we found the trial court had not erred in finding there was not an "abandonment" of the distribution line easement under R.C. 163.21(A), but we determined the trial court should have awarded the Landowners costs that it deemed just under R.C. 163.21(B) based upon the trial court's determination that Ohio Power must remove the unnecessary distribution line easements from its appropriation.

{¶13} Ohio Power appealed. The Supreme Court of Ohio agreed with our determination that neither of the presumptions in R.C. 163.09(B)(1)(a) and (c) applied and that the trial court needed to make a separate finding of necessity for each of the easement terms, but did not believe Ohio Power should be given a second opportunity to present additional evidence at a rehearing:

> [W]e agree with the appellate court's determination that the trial court erred in holding that the presumptions under R.C. 163.09(B)(1)(a) and (c) apply, and we agree with the appellate court's determination that the trial court needs to make a separate necessity finding with regard to each easement term. Thus, we affirm the court of appeals' judgment reversing the trial court's determination that the appropriations are necessary. We agree with the appellate court that the matter must be remanded to the trial court but do not agree that another hearing is required. Rather, we remand the cause to the trial court for it to consider the appropriations and separately determine whether they are necessary.

*Ohio Power Co. v. Burns*, 2022-Ohio-4713, ¶ 2. The Court also determined that "the term 'appropriation' means the appropriation of the specific property sought to be appropriated by the agency; it does not mean the project or taking in general . . . ." *Id.* at ¶ 24.

> Indeed, reading "appropriation" to mean anything other than *the appropriation of the specific property right sought to be acquired by the agency from the landowner* would be inconsistent with the concept of

eminent domain and contrary to the protection of the landowner's property rights.

(Emphasis added.) *Id.* at ¶ 25. The Court also agreed that the abandonment provision in R.C. 163.21(A) was not implicated but determined that Landowners had failed to raise the issue of fees under an alternative provision in R.C. 163.21(B) in the lower courts and therefore forfeited this argument. *Id.* at ¶ 36, ¶ 39. Thus, the Court's reversal in part, of our decision was based on procedural grounds, rather than the substance of the analysis.

{¶14} Upon remand, the trial court ordered the parties to submit post hearing briefs. In its post hearing brief, Landowners identified specific easement terms and argued that, even if Ohio Power presented enough evidence to obtain a rebuttable presumption of necessity, it did not meet its ultimate burden of proving that the easement terms are necessary. In its post hearing brief, Ohio Power argued that it did present sufficient evidence on each of the easement terms to meet its burden of showing that each of the easement terms were necessary. The trial court issued a post remand order in which it found that Ohio Power had submitted sufficient evidence to prove that each of the easement terms were necessary, except for the distribution lines term, which it found moot.

{¶15} Landowners appealed.

## II. ASSIGNMENTS OF ERROR

{¶16} Landowners designate two assignments of error for review:

I. The Trial Court erred by failing to conduct a property-by-property[3] review of each challenged easement term as to whether Ohio Power needed it specifically for the specific project on that specific property.

---

[3] We use the phrase "property-by-property" as stated in the Assignment of Error section of the briefs. The assignment of error is restated in the argument section of the briefs using the phrase "parcel-by-parcel."

II. The Trial Court erred in finding that Ohio Power met its burden of proof that the easement rights that Ohio Power sought to take were necessary.

### III. LEGAL ANALYSIS

#### A. Legal Requirement to Review of the Easement Terms for Each Landowner

{¶17} Landowners contend that the trial court failed to review the easement terms and determine whether the terms were necessary for each of the four Landowners' properties. They argue that each of their separate properties have different site conditions, and the trial court failed to "make any specific findings regarding the Landowners' property."

{¶18} Ohio Power argues that Landowners have waived the argument that the trial court did not review the easements for each of the Landowners' individual properties because they did not raise it in the previous appeal. Additionally, Ohio Power contends that the parties "expressly agreed that all four cases and their challenges were in fact 'substantially similar.'" Moreover, Ohio Power contends that, at the hearing, the Landowners did not raise any property-specific issues through Mr. Burns, who Ohio Power argues "was presented as a 'representative' of all of the [Landowners]."

{¶19} We find that the Landowners did not waive this argument. The trial court's first decision applied two presumptions, one irrebuttable, which resulted in the trial court's failure to conduct an adequate review of the necessity issue and its failure to issue findings on the easement terms. Therefore, in the first appeal, because the trial court's review was insufficient and contained no findings, it had not made the alleged error Landowners are now claiming. In other words, when an inadequate review occurs and no findings are made, it is not possible to complain about specific errors made in nonexistent findings.

1. Standard of Review

**{¶20}** The parties disagree on the appropriate standard of review. The Landowners argue it is de novo and Ohio Power argues that the trial court's findings are not subject to reversal unless they were against the manifest weight of the evidence. We find merit in both parties' positions because the standard of review depends upon whether the appellate court is reviewing a legal question or a factual question.

**{¶21}** In the previous appeal, *Burns,* 2021-Ohio-2714, ¶ 45, the Landowners challenged the trial court's interpretation and application of the statutory presumptions in R.C. 163.09, which was a question of law. "The interpretation and application of a statute is a matter of law that an appellate court reviews de novo." *Id.* citing *State v. Schneider*, 2021-Ohio-653, ¶ 45 (4th Dist.); *State v. Blanton*, 2018-Ohio-1278, ¶ 50 (4th Dist.) ("When interpreting statutes and their application, an appellate court conducts a de novo review, without deference to the trial court's determination").

**{¶22}** In this appeal, the Landowners' first assignment of error also raises a matter of law – the question is whether the trial court must make specific findings that the easement terms it seeks from the Burns are necessary, the easement terms it seeks from the Mays are necessary, the easement terms it seeks from the Dexters are necessary, and the easement terms it seeks from the Bohlens are necessary. In other words, the Landowners contend that the trial court's duty to make specific findings concerning the challenged easement terms is not changed merely because the individual landowner's hearings were consolidated. *Burns,* 2022-Ohio-4713, ¶ 25. Therefore, we review this issue de novo.

{¶23} The Landowners' second assignment of error raises mixed questions of fact and law. The question of whether the trial court's necessity findings were supported by some competent and clear evidence is a factual question we review for clear error. But the Landowners' contention that the trial court made errors of law as it relates to the "anti-abandonment" and the "distribution lines" terms is reviewed de novo. The Supreme Court of Ohio addressed this mixed standard of review in appropriation cases recently:

> The country club's arguments speak to the appropriate standards to apply under R.C. 163.09(B)(1) as well as to the evidence before the trial court related to those standards, and thus its arguments present mixed questions of fact and law. We review the legal questions before us de novo but defer to the trial court's findings of fact, reviewing them only for clear error. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 37. We remain mindful that when the sovereign right of eminent domain is legislatively delegated to parties such as the History Connection, the terms of that delegation must be strictly construed. *Pontiac Improvement Co. v. Cleveland Metro. Park Dist. Bd. of Commrs.*, 104 Ohio St. 447, 454, 135 N.E. 635 (1922).

*State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.,* 2022-Ohio-4345, ¶ 24. When applying clear error review, "we give due weight to inferences the trial court drew from the facts." *State v. Marcellino*, 2019-Ohio-4837, ¶ 10 (11th Dist.). Under a clear error review, "a trial court's findings of fact will be upheld when they are supported by some competent and credible evidence." *Burns*, 2022-Ohio-4713, ¶ 35.

{¶24} We also note that the question of whether a taking has occurred and the extent of it is reviewed de novo. *Ohio Dept. of Natural Resources v. Thomas*, 2016-Ohio-8406, ¶ 46 (3d Dist.) ("we review the trial court's decision on the extent of the take *de novo*, without any deference to the trial court's determination as it is an issue of law"); *Masheter v. Boehm*, 37 Ohio St.2d 68, 77 (1974) ("determination of the extent of the

taking is a question of law to be decided by the court"). In both *Thomas* and *Masheter* the question of the extent of the take involved issues of law.

{¶25} In *Thomas,* the landowners brought a mandamus action seeking to compel ODNR to bring appropriation proceedings for the taking of their property due to flooding from a spillway modification. The trial court found that a taking had occurred, and that the extent of the take was determined to be the 2003 flood level, which was upheld on appeal to the Supreme Court of Ohio. Later, nearly a year into ODNR's appropriation proceeding, ODNR sought to amend its petition and change the extent of the take using a different year to calculate the flooding. The trial court denied its request to amend based on what appeared to be the law of the case doctrine. The appellate court found that in "reviewing the issue of the 'extent of the take' *de novo*, we cannot find that the trial court's election to use the 2003 flood level as the extent of the take was error." *Thomas* at ¶ 64.

{¶26} In *Masheter*, the director of highways brought an appropriation action to take real property that contained a job-stamping plant that manufactured metal components. The issue was whether the machinery and equipment on the premises constituted part of the real property being appropriated: "at what point will personal property be considered to have become merged with the land or structures on the land appropriated." *Masheter* at 71. The Court held that the scope of the appropriation was a question of law and that both "the trial and appellate courts applied an erroneous test of law to the facts before them in determining the scope of the appropriation." *Masheter* at 71-72 (rejecting "the assembled-industrial-plant doctrine" applied by the trial and appellate courts and finding that the general law of fixtures provided the appropriate test).

**{¶27}** Because the question of whether there is a taking or the scope of the taking is not before us, the de novo standard of review announced in *Thomas* and *Masheter* is not applicable. We discuss it only to minimize any confusion that could arise from their holdings.

2. Legal Analysis

**{¶28}** The Supreme Court of Ohio held that the term "appropriation" does not mean the "project" or the "taking generally" but refers to the appropriation of the easement rights sought by the petition. *Burns*, 2022-Ohio-4713, ¶ 21. The Court refused to read "appropriation" "to mean anything other than the appropriation of the specific property right sought . . . from the landowner." Therefore, as to each individual landowner (Burns, May, Bohlen, and Dexter), Ohio Power had the burden by the preponderance of the evidence to show the necessity of each easement term. "In this case, the easement terms include various rights that Ohio Power seeks to take from the landowners. Therefore, each easement term that is challenged must be reviewed by the trial court." *Id.* at ¶ 34. Under R.C. 163.09(B)(1)(b), Ohio Power is entitled to a rebuttable presumption of the necessity of the easement terms if it presents evidence of necessity for each easement term. In this case, the Supreme Court of Ohio determined that Ohio Power had presented evidence of the necessity for the easements and is entitled to the rebuttable presumption under R.C. 163.09(B)(1)(b):

> Ohio Power did present evidence of the necessity for the appropriations through Rentschler's testimony and exhibits submitted through her testimony, and it is thus entitled to the rebuttable presumption under R.C. 163.09(B)(1)(b). This rebuttable presumption gives rise only to a prima facie showing of necessity. It did not shift the ultimate burden of proof from Ohio Power to the landowners but, rather, it imposed on the landowners " 'the burden of going forward with evidence to rebut or meet the presumption,'[.] " The landowners did not need to prove that Ohio Power acted in bad faith,

abused its discretion, or acted with an improper purpose to satisfy this burden. Rather, if the landowners produced evidence that balances or counterbalances the presumption, then the presumption disappears and the case must be resolved on the evidence presented under the original burden of proof. (Citations omitted. Brackets added.)

*Burns,* 2022-Ohio-4713, ¶ 32.

**{¶29}** The Court also found that Ohio Power presented evidence on "each of the easement terms individually" through Rentschler's testimony and exhibits, but the trial court did not make findings to support its determination of necessity on each of the individual easement terms. *Id.* at ¶ 35. The Court remanded "the cause to the trial court to make specific findings concerning the challenged easement terms consistent with the presumptions set forth in R.C. 163.09(B)(1)(b)." *Id.*

**{¶30}** The Supreme Court of Ohio's remand instructions and the provisions in the eminent domain statutes both require the trial court to make specific findings as to each of the challenged easement terms for each of the Landowners. However, we disagree with the Landowners' characterization of the trial court's decision as failing to "make any specific findings regarding Landowners' property."

**{¶31}** The easements in question contained identical terms and the Landowners each objected to all the same easement terms as unnecessary. When Ohio Power presented its evidence of the necessity of the easement terms, it was referring to all four of the Landowners and each of their individual easements, as these excerpts from Ohio Power's witness, Rentschler, state:

Q. And just so we're clear, it appears the landowners that we're here to talk about today are Ronald and Barbara Bohlen, Michael Burns, Jeffrey and Holly Dexter, Ryan and Denay May. Is that correct?
A. That is correct.
Q. Okay. And can we agree that, as you testify today, your testimony will apply to all four landowners unless we distinguish otherwise?

A. Yes.

*  *  *

Q. Let's talk about the easements. So let's look at Exhibit 5.1. And identify for the Court this document, please, when you've had a chance to look at it.

A. This is the supplemental easement that we are seeking for Ronald and Barbara Bohlen.

Q. And just for the Court's benefit, if you look at 5.2 * * * all the way through 5.11, * * * are these all the other easements at issue for the landowners here today?

A. Yes, they are.

Q. Okay. We're going to focus on just 5.1.

A. Okay.

Q. And just to be clear, unless we identify otherwise, all the terms that we're looking at in 5.1 are the same as in all the other easements. Is that fair?

A. That's fair.

Thus, the evidence Ohio Power presented about the necessity of the easement terms for the Bohlen easement, marked as Exhibit 5.1, applied equally to the other easements Ohio Power sought from the other three Landowners. Landowners contend that "Ohio Power did not present any specific testimony concerning any specific need for the challenged rights on the Burns' property; nor as to any of the other landowners' unique properties," but this fails to recognize that Rentschler's testimony addressed all four Landowners and the easement terms for each of them.

{¶32} Similarly, Landowners contention that "the trial court's post-remand order is devoid of specific facts as to any specific property" is not accurate. The trial court reviewed the testimony Rentschler gave about the contested easement terms. It heard her testify that the evidence Rentschler provided went to all the contested easements terms and that it applied to all four Landowners unless she testified otherwise.

{¶33} The trial court's decision takes this same approach. The trial court acknowledged that Ohio Power "seeks to appropriate easements across each of the Defendants' properties" and that it considered "the necessity hearing in its entirety and the accompanying exhibits." The trial court discusses the testimony concerning the

necessity for (1) the steel frame H structures; (2) the 138 kV transmission lines; (3) the internal communication lines; (4) the right to construct, etc. structures and appurtenant equipment necessary for the transmission line within the easement area; (5) the expansion of the easement width from 80 feet to 100 feet; (6) ingress, egress, and access routes; (7) vegetation, including tree, control within the easement and tree protection zone; and (8) Landowners' use of the easement.[4] The trial court found that the necessity of all these easement terms was established by the testimony of Rentschler. Because the trial court found that none of the four Landowners presented any evidence to rebut the presumption of necessity, there was no need for it to address any property-specific issues as none were raised either in Rentschler's testimony or by the Landowners. The trial court found, "the Defendants have submitted no evidence either to rebut the presumption of necessity that Ms. Rentschler's testimony raises under R.C. 163.09(B)(1)(b), or to refute [Ohio Power's] evidence."

**{¶34}** In sum, the trial court was required to consider the easement terms for each of the four Landowners and we find that it did so. Here those terms were identical for all four Landowners, Ohio Power presented evidence that each of the terms was necessary for each of the easements, and the trial court found that each of the easement terms was necessary as to each Landowner. Both the hearing testimony and the trial court's decision reflected the understanding that when, for example, Rentschler testified that H poles were necessary to the Bohlen's easement, they were likewise necessary for the Burns, May, and Dexter easements, without the need to repeat all the same evidence and findings four different times.

---

[4] We intentionally omit the anti-abandonment and distribution line terms from this discussion as we will address it fully when we address Landowners' second assignment of error.

**{¶35}** We overrule Landowners' first assignment of error.

### B. The Trial Court's Finding of Necessity

**{¶36}** Landowners contend that the trial court erred in finding that Ohio Power met its burden of proof that the easement rights it sought to take were necessary. As previously discussed, the question of whether the trial court's necessity findings were supported by some competent and clear evidence is a factual question we review for clear error. We will uphold the trial court's findings if they are supported by some competent credible evidence. But the Landowners' contention that the trial court made errors of law as it relates to the "anti-abandonment" and the "distribution lines" terms is reviewed de novo.

**{¶37}** " 'The "necessity" required in the exercise of the power of eminent domain does not require a showing of absolute necessity, but includes "that which is reasonably convenient or useful to the public." ' " *Columbia Gas of Ohio, Inc. v. Phelps Preferred Investments, LLC*, 2022-Ohio-2540, ¶ 28 (3d Dist.). However, we resolve any doubt over the propriety of the easements in favor of the landowner on the necessity and extent of the easements. *Burns*, 2021-Ohio-2714, ¶ 59 (4th Dist.).

### 1. The Right to Construct

**{¶38}** Each of the four easements gives Ohio Power "The right, now or in the future, to construct, reconstruct, operate, maintain, alter, improve, inspect, patrol, protect, repair, remove, replace, upgrade and relocate within the Easement Area, structures and appurtenant equipment necessary for the Transmission Line." "Transmission Line" is defined in the easements as "a single electric transmission line, not to exceed 138 kV, and for distribution and internal communication purposes related to the transmission of

electricity." For ease of discussion, we refer to this easement term as the "right to construct." Also for ease, we refer to the project as "a 138 kV transmission line" even though it is understood to include the distribution and internal communication lines. In her direct testimony, Rentschler went into detail about the necessity for the right to construct a two-pole H-frame structure, and in some instances a three-monopole system, depending upon the turns and angles in the project. She also testified about the need to use steel poles due to the durability and resistance to deterioration. Rentschler testified about the need to maintain, repair, alter, or replace the structures in sufficient detail to establish a presumption that the right to construct term was necessary.

{¶39} Landowners argue that "Ohio Power's testimony revealed that its easement is not tied to what is reasonably necessary to construct the Project, as its easement contains no construction limitations based on those Project plans." Landowners argued that this was established during their cross-examination of Rentschler who agreed that nothing in the easement limits the types of structures that Ohio Power can construct within the easement.

{¶40} We reviewed Rentschler's cross-examination testimony and, contrary to Landowners' representations, she does not testify that there are no limitations on the right to construct.

> Q. There is no restriction or limitation on what AEP [Ohio Power] can construct within the easement area; correct?
> A. That's incorrect. It has to fit the use specified in this document, which is a - - a single transmission line for the purposes of transmitting power and the fiber line.
> Q. So other than that caveat, that it be related to a single 138 kilovolt transmission line, there is no limitation on [Ohio Power's] right to construct whatever it deems necessary within the easement area. Is that correct?
> A. For the transmission of power, correct.

Rentschler testified that easement term limits Ohio Power to construct only what is necessary to support the 138 kV transmission line for the transmission of electricity. While Rentschler concedes that the easement allows for some flexibility between a two pole or three pole structure and the structure's materials, Ohio Power is significantly limited to construct only what is necessary to convey a 138 kV transmission line.

{¶41}   Landowners cite cases which they argue support their contention that this easement term is too broad and therefore unnecessary: *Columbia Gas of Ohio, Inc. v. Phelps Preferred Investments, LLC*, 2022-Ohio-2540 (3d Dist.); *Columbia Gas of Ohio, Inc. v. MCD Farms, LLC, et al.,* Delaware C.P. Case Nos. 22-CVH-080398, 22-CVH-080401, 22-CVH-080412 (August 28, 2023); *Meyers v. N. Ind. Pub. Serv. Co.,* 258 N.E.2d 57 (Ind. 1970).  In *Phelps* and *MCD Farms, supra*, the appropriations involved Columbia Gas and easements for natural gas pipelines. The Indiana case, *Meyer, supra,* involved an electric utility and a 365 kV transmission line. However, each of those cases are distinguishable.

{¶42}  In *Phelps*, Columbia Gas's project specified that it would construct a natural gas pipeline of 12-inch diameter coated steel. *Phelps* at ¶ 29. However, the easement sought by Columbia Gas sought the right "to lay a pipeline subsurface on the premises." The easement contained no restriction on size of pipeline even though the project only required a 12-inch pipe. And, there was no restriction on what would be transported through the pipeline, even though the project was for natural gas. *Phelps* at ¶ 30. The appellate court affirmed the trial court's finding that the easement was too broad and therefore unnecessary for the project. *Id.* at ¶ 32.

**{¶43}** In *MCD Farms*, Columbia Gas's project was for the transmission by a public utility of a specifically defined type of natural gas. However, the easements did not limit the pipelines to "transmission" lines, did not limit the type of natural gas as defined by the project, and did not limit the operator to be a public utility (i.e., operator regulated by PUCO). The trial court found that the project was limited to the transmission of natural gas that will serve the public, but that the easements were so broad as to permit Columbia Gas to convert the pipeline to gas gathering, distribution, and discharge lines; change the type of natural gas transported to other gases such as methane, butane, ethane, etc.; and convert it to a non-public use. *Id.* at 6-7.

**{¶44}** In *Meyers*, the electric utility's project was a 345 kV transmission line that required a 150-foot-wide easement. However, instead of a 150-foot-wide easement, the electric utility sought a 200-foot-wide easement because it might want to add another 138 kV transmission line next to the 345 kV line sometime in the indefinite future and would want to have that additional 50-foot-wide easement. The court held that the 200-foot-wide easement was unnecessary. "The speculation by their engineer that sometime in the future, maybe as much as six or ten years in the future, there will possibly be a necessity for an additional line does not justify imposing the additional 50 foot easement upon the properties of the appellants. To do so would be to permit the appellee to maintain an action of condemnation for a purely speculative future need." *Meyers,* 258 N.E.2d 57, 58-59.

**{¶45}** The case before us is distinguishable because here the easements limit Ohio Power to the right to construct only what is necessary for a 138 kV transmission line. Unlike the property owners in *Phelps, MCD Farms*, and *Meyers*, Landowners have not

identified any way the right to construct term in the easements exceed this project specification.[5] Everything Ohio Power builds within the easement area, including anything aerial or subsurface, is limited to what is necessary for a 138 kV transmission line. We find that the right to construct easement term is supported by some competent, credible evidence; trial court did not clearly err in its findings of necessity for the right to construct easement term.

## 2. The Access Routes

**{¶46}** The easements give Ohio Power the right to have reasonable ingress and egress over the easement area. However, if the easement area "shall become blocked or otherwise rendered unsafe or hazardous for use," then Ohio Power "may temporarily access the Easement Area from other points across Grantor's Property, so long as that access is both reasonable and limited to the duration of the interference or safety hazard." It also requires that Ohio Power "return the access area to its preexisting condition or pay damages to Grantor." Landowners have not contested the general right to reasonable ingress and egress within the easement area. However, they argue that the term that gives Ohio Power temporary, emergency access over other portions of the property (outside the easement area) due to a blocked or otherwise unsafe easement area is too speculative and that an "unknown and speculative event cannot satisfy Ohio Power's burden of demonstrating the necessity for these access rights."

**{¶47}** Landowners' argument conflates *future uses* with *future interferences* with the current proposed use. For example, in the *Meyers* case, *supra,* the current proposed

---

[5] Ohio law affords remedies to the subservient estate owner when the owner of the easement abuses or misuses easement rights and termination of an easement may be an appropriate remedy. *See Walbridge v. Carroll*, 2009-Ohio-5183, ¶ 17 (6th Dist.) and cases cited therein.

use was a 345 kV transmission line, but the easement terms anticipated a different and speculative additional future use for a 138 kV transmission line. The Indiana court rejected the additional 50 feet width sought in the easement because the additional 138 kV transmission line was a future and speculative use. Here the proposed use now and in the future is the same – a 138 kV transmission line. The easement term, which allows for temporary emergency access in the event of a downed tree or other obstacle, anticipates *an interference* with the current proposed use; it does not propose a new or speculative future use.

{¶48} Rentschler testified that storms are the biggest threat to electrical power lines and down trees and other obstacles often block the easement access, forcing Ohio Power to temporarily use a different, but reasonable, access route to the line. When asked about the emergency access provision, Rentschler explained:

> A. One of the biggest threats to our lines are storms. And with storms come downed trees, down power lines, etc. If a storm were to come through, take down a bunch of trees, knock our line down, and it is blocking access to the – on these designated access roads, we have to have the ability to traverse off of them in order to safely be able to repair the line, restore power to the community, and do it as safely and efficiently as possible.
>      And again, that provision towards the end, if we traverse off of our defined access roads, we will restore them to their pre-existing condition or compensate the landowner for any damages that we happen to make.

{¶49} Rentschler's testimony about the need to have temporary, emergency access for some unknown future interference was sufficient to establish a presumption that the right for temporary, emergency access was necessary. Landowners did not cross examine or otherwise challenge Rentschler's testimony concerning the temporary, emergency assess provision, nor did they present any witnesses to rebut Rentschler's testimony about the need for temporary, emergency access routes. None of the individual

Landowners testified that their property differed such that it would not require emergency access. Therefore, this easement term is supported by some competent credible evidence; the trial court did not commit clear error when it determined that the temporary emergency access provision of the easements was necessary.

### 3. The Tree Protection Zone

**{¶50}** The easement contained a "Tree Protection Zone" term which gave Ohio Power a limited right to cut down trees outside the easement zone:

> cut down, trim or remove trees situated on Grantor's Property which adjoin the Easement Area within the Tree Protection Zone when in the opinion of AEP those trees are dead, dying, diseased, leaning, or structurally defective and may endanger the safety of, or interfere with the construction, operation or maintenance of AEP's facilities or ingress or egress to, from or along the Easement Area. The Tree Protection Zone extends eighty feet on all sides of the Easement Area depicted in Exhibit A.

**{¶51}** Landowners contend that the Tree Protection Zone is unnecessary because it is undefined, is not depicted on the visual map of the easement, and there are other properties within the Tree Protection Zone that do not have any evidence of condemnation proceedings having been brought against them. By way of example, Landowners argue that on the Mays' property, the Tree Protection Zone encompasses the entirety of their home and extends to the adjacent property owners' parcels, but those property owners' parcels are unencumbered by Ohio Power's Tree Protection Zone. Ohio Power contends that the Tree Protection Zone is specifically defined as 80 feet outside of the easement area and is precisely and mathematically defined in the easement documents themselves. Ohio Power also contends that Landowners failed to offer rebuttal evidence and did not put evidence of their allegations concerning the Mays' property into the record.

**{¶52}** Rentschler testified that the Tree Protection Zone was limited to 80 feet outside of the easement area and pertained only to dead, dying, deceased, leaning or structurally defective trees that pose a danger or threat to the line. Rentschler testified that Ohio Power needs the right to trim or remove trees up to 80 feet from the easement area because of the risk of a tree falling on the line:

> Q. * * * why do you need to be able to go outside that hundred foot easement corridor?
> A. So, as we mentioned, that hundred feet needs to be clear for the safety and operation of that line. The area outside of that hundred feet, we need to remove any danger trees, as it's defined here, from potentially falling over and making contact with our line.
>      So we -- we've come up with this eighty feet past, because if a tree grows eighty, hundred feet, and it's situated fifty feet from the line, if it comes down, it will take the line out and ultimately cause a power outage.

Using the Bohlen easement as an example, Rentschler describe the location of the 80-foot Tree Protection Zone, but stated that it was not drawn on the map, and testified that it could be mathematically calculated.

**{¶53}** We are unpersuaded by Landowners' argument that the Tree Protection Zone is undefined. It can be calculated using the maps included with the easements, as Rentschler testified. Additionally, even though Landowners argued in their brief that the Tree Protection Zone was unnecessary because other adjacent property owners, such as ones near Mays' property, fell within the Zone but were not subject to an appropriation petition, there was no evidence of this presented at the hearing.

**{¶54}** Rentschler's testimony about the need to cut down, trim, or remove trees 80 feet outside the easement area when the trees are dead, dying, deceased, leaning, or structurally defective and endanger the safety of or construction of the 138 kV transmission line was sufficient to establish a presumption that the Tree Protection Zone

was necessary. Landowners did not present any evidence to rebut Rentschler's testimony. Therefore, this easement term is supported by some competent credible evidence; the trial court did not commit clear error when it determined that the Tree Protection Zone term of the easements was necessary.

#### 4. The Use of Herbicides

**{¶55}** In addition to the Tree Protection Zone discussed above, the easements give Ohio Power the right, in its "discretion, now or in the future, to cut down, trim or remove, and otherwise control any and all tress, overhanging branches, vegetation or brush situated within the Easement Area." Landowners contend that the "otherwise control" language includes the use of herbicides and that Ohio Power did not meet its burden because Rentschler testified that the use of herbicides is only necessary sometimes, specifically where land conditions and terrain require it, and she did not testify that it was necessary for these easements. Additionally, the Landowners argue that Rentschler's testimony that cost considerations sometimes drive the use of herbicides is insufficient to show necessity. Ohio Power contends that Landowners never raised any objections to this provision until this appeal and therefore waived it. Ohio Power contends that even if it is not waived, Rentschler's testimony established the necessity to use herbicides.

**{¶56}** We find that Landowners did not waive the right to contest this provision. In their answers to Ohio Power's appropriation petition, Landowners specifically challenged this easement term and asserted that the right " 'to remove and otherwise control' trees, branches, vegetation or brush is vague and overly broad, and as written may include the use of herbicides and other tree growth regulators that are unnecessary to protect

Plaintiff's use of the easement area." Additionally, in our decision in the parties' first appeal, Landowners raised the herbicide issue, but we found that because the trial court did not address or review the easement terms individually, we would not engage in a review for the first time on appeal and we used the herbicide provision as an example. "Thus, for example, the parties' arguments concerning whether the herbicide provision is necessary is a matter for the trial court's consideration on remand." *Burns*, 2021-Ohio-2714, ¶ 59. Ohio Power's waiver argument fails.

{¶57} Ohio Power presented evidence about the need to control vegetation within the easement area through Rentschler's testimony regarding the need to "trim" within the easement area:

> Q. The next paragraph appears to deal with AEP's [Ohio Power's] rights to trim within the easement area and with outside – outside the easement area. Is that correct?
> A. That's correct.
> Ql. And what's the reason for the right to - - it looks like you have full discretion to trim the entire width of the easement corridor, the hundred feet. Is that correct?
> A. That's correct.
> Q. And what's the reason for that?
> A. As I mentioned before, we have our assets situated within this area, and we have a blowout[6] from the conductor. If our conductor were to make contact with anything, or if it were to arc or something, it could cause a fire; if in a wooded area, it could be very dangerous to any surrounding people if its within that hundred feet.

Rentschler also testified during cross-examination that the use of herbicides or other chemical tree growth regulators as a method to control growth in the easement area was not explicitly excluded from the easements:

> Q. There's no limitation within this paragraph on the use of herbicides or other chemical tree growth regulators. Correct?
> A. Not explicitly, no.

---

[6] Rentschler explained that the term "blowout" is not an explosion, but the natural swing of the wire as the wind blows.

Additionally, Rentschler testified that the easement does not seek all rights within the easement, but only rights for the specific use: a 138 kV transmission line. Therefore, Landowners could do a variety of activities within the easement area, including growing crops and pasturing animals:

> A. So we have agricultural crops within our easements, all over our footprint. So growing crops, harvesting, they can be used for driveways, parking lots, they can put fences in them, pastures for animals, just to name a few.

{¶58} Rentschler also gave testimony about a different project located in a different area of the state, the "Pickaway County Madison Harrison" project, which involved a single pole line for a 69 kV transmission line. She testified that for that project Ohio Power needed the herbicide provision, even though the landowners involved in that project wanted to include a provision that Ohio Power "may not use herbicides or other chemical growth regulators to control vegetation or trees within the easement area." When asked why Ohio Power did not agree to strike the herbicide provision in the Pickaway County Madison Harrison Project, Rentschler explained:

> A. So as a public utility, we have the responsibility to try to keep our costs as reasonable and as low as possible for our customers and the communities that we operate in. Sometimes, depending on the land conditions, the terrain, where we are, the use of herbicides is a necessity and useful form of restricting growth under our lines, which ultimately results in more costs, having to go back in and continuing to clear.
> So in our opinion, it is necessary to keep that language in the document, to be able to service our customers.

{¶59}  Ohio Power argues that the testimony about herbicide use in the Pickaway County Madison Harrison project establishes that herbicides are "a 'reasonably convenient or useful' method of brush control across the many thousands of miles of easement corridor that [Ohio Power] must maintain."  We do not doubt that herbicide use "[s]ometimes, depending on the land conditions, the terrain, where we are" may be a

necessary and cost-effective method of vegetation control across the "thousands of miles" Ohio Power maintains. But this case isn't about thousands of miles somewhere; it is about the 10-mile project from the Devola Station to the Bell Ridge Station in Washington County, Ohio.  Ohio Power presented no evidence that the herbicide control term was necessary for this project on these Landowners' properties. All the evidence concerning vegetation control is set forth above. Ohio Power clearly established the necessity to maintain, trim or cut vegetation but did not testify about the need to use herbicides or other chemical methods to control growth. There was no testimony that the "land conditions" and "terrain" along this 10-mile corridor in "where we are" Washington County, Ohio needed maintained with herbicides or other chemical growth regulators. And, more importantly, there was no testimony that herbicides or other chemical growth regulators were needed on the Landowners' easements. To the contrary, Rentschler's testified that there are multiple uses within the easements, including agricultural crops, which indicates that for the Bell Ridge-Devola project – and these Landowners specifically – the use of herbicides or other chemical growth regulators may not be necessary.

{¶60} We agree with the trial court's finding that vegetation control through trimming was established through the testimony of Rentschler and that "the need to trim the entire width of the easement is necessary." However, there was no competent credible evidence to support the trial court's finding that herbicide use as method of vegetation control was a necessary easement term. The testimony Rentschler gave was not project-specific evidence. Rather, Ohio Power established that in certain situations, herbicides are a cost-effective method for maintaining vegetation. However, there was no testimony about the need for herbicide use on the Bell Ridge-Davola project or the

characteristic of the land or terrain for that project or for the specific Landowners' easements that would support a finding of necessity for the use of herbicides and other chemical growth regulators to control vegetation. The finding that herbicide or other chemical growth regulators was necessary was clear error. The "otherwise control" easement term is too broad; it takes more than is necessary. The Landowners' easement terms should explicitly exclude the use of herbicides or other chemical growth regulators for vegetation control because it is unnecessary, and Ohio Power is not entitled to appropriate that particular property right.

### 5. The Anti-Abandonment Term

**{¶61}** The easements contain a provision referred to by the parties as the "anti-abandonment clause" which states:

> The failure of AEP to exercise any of the rights granted herein, or the removal of any facilities from the Easement, shall not be deemed to constitute an abandonment or waiver of the rights granted herein.

**{¶62}** Landowners contend that the anti-abandonment clause strips the Landowners of the ability to use the common law doctrine of abandonment which would otherwise allow the property to revert to the Landowners. Additionally, Landowners contend that the trial court incorrectly summarized Rentschler's testimony as evidenced by this Court's prior decision. *Burns*, 2021-Ohio-2714, ¶ 15.

**{¶63}** Ohio Power contends that the anti-abandonment provision does nothing more than provide helpful legal information to the Landowners: "The clause simply informs landowners" that removal of poles during replacement work or failing to exercise some of its rights at any given moment, such as emergency access which is used sparingly, does not constitute a "gotcha" abandonment in favor of the Landowners. In

other words, Ohio Power is merely giving legal information to the Landowners. Ohio Power also contends that the anti-abandonment provision does nothing more that restate the first element of common law abandonment.

{¶64} At the hearing, Ohio Power failed to put on any evidence concerning the necessity of the anti-abandonment clause. Rentschler did not testify about the anti-abandonment clause because it was intentionally omitted as a legal issue:  "The next two paragraphs, let's skip over, because those are legal issues." On cross examination, Rentschler testified that an easement that is abandoned through nonuse reverts to the property owner and that the anti-abandonment clause means that Ohio Power is taking this right away from the Landowners. When asked why, if Ohio Power no longer needed the easement, the property could not simply revert to the Landowners, she testified that "That's something we could negotiate or -- do the paperwork to clear title once those facilities are removed." Ms. Rentschler was unable to explain the need for the anti-abandonment provision other than to speculate that, even after the easement was abandoned, "we may need to come back and build the line again. I can't -- I can't speak to that more than -- than that."

{¶65} The trial court determined that the anti-abandonment provision "is an accurate statement of the case law in Ohio regarding abandonment of easement rights." The trial court also summarized Rentschler's testimony as establishing that "there are instances where not all rights granted in an easement are exercised and sometimes facilities are removed from an easement."  Based upon this testimony, the trial court determined that Ohio Power had proven that the anti-abandonment clause was necessary.

**{¶66}** We find that the anti-abandonment provision is not an accurate statement of the law of abandonment in Ohio; it is an incomplete statement that could be misleading or, as Landowners argue, could be used to foreclose a future abandonment action. The law of abandonment requires the owner of the subservient estate (here the Landowners) to show two things: (1) nonuse of the easement and (2) an intent to abandon the easement. *Bauerbach v. LWR Enterprises, Inc.* 2006-Ohio-4991, ¶18 (4th Dist.). Informing the Landowners that nonuse of the easement does not constitute abandonment discourages Landowners from pursuing a meritorious abandonment claim. A Landowner, witnessing ongoing nonuse of the easement, may read the anti-abandonment clause and have the mistaken belief that they have no cause of action when, in fact, they would have a claim for abandonment if they can prove the second prong – intent to abandon. Therefore, not only is the anti-abandonment clause not an entirely accurate statement of the law, but it is a misleading half-truth because it omits reference to the second prong. Landowners' argument goes a step further and suggests that the anti-abandonment clause expressly removes that first prong and precludes the use of evidence of nonuse to show intention.

**{¶67}** We also disagree with the trial court's characterization of Rentschler's testimony. First, as we previously discussed, Rentschler testified that the purpose of this clause as she understood it was to remove the Landowners' right to assert an abandonment claim. In the testimony the trial court references, Rentschler gave the following example, but in this example, the easement is still in use:

> A. So facilities can be our structures or the wires attached. Sometimes, we have to remove one of the wires that were [sic] originally there. By us removing one of those, that does not count as an - - would not constitute an abandonment of our rights here. It would just be us having to modify the line.

Q. Well, the situation that you're describing, the easement would still be in use, correct?

A. Yes.

**{¶68}** Regardless, it is not relevant whether the anti-abandonment clause is (1) merely a statement of existing law; (2) a misleading half-truth; or (3) an attempt to take the right to claim an abandonment away from the Landowners. Under any of these three possibilities the clause is unnecessary. The trial court's finding the anti-abandonment clause is necessary was clear error. The Landowners' easement terms should explicitly exclude the anti-abandonment clause because it is unnecessary, and Ohio Power is not entitled to appropriate that particular property right.

### 6. Distribution Lines

**{¶69}** Ohio Power sought an easement for "a single electric transmission line, not to exceed 138kV, and for distribution and internal communication purposes related to the transmission of electricity." Distribution lines are lines that service homes and businesses and internal communications lines help the system communicate with itself and informs Ohio Power when a breaker may trip in advance of a full substation outage. Rentschler testified at the hearing that Ohio Power was willing to remove the distribution line right from the easement even though it had sought those rights up until the hearing date because they had no need for that right as they were not planning to build distribution lines.

**{¶70}** Following the hearing, the trial court determined:

Upon the commencement of the Hearing, consistent with discussion off the record, AEP's [Ohio Power's] counsel advised that the acquisition of electric distribution rights is no longer required. [Ohio Power] offered to withdraw the word "distribution" from the first page of each of its proposed Easements

and Right of Way agreements ("Easements"). That offer was met with objection by Defendants' counsel, who asserted that any modification of the Easements constitutes an abandonment of the appropriation. The Court overruled the objection for purposes of the Hearing and took the matter under advisement.

*                    *                    *

9. [Ohio Power's] withdrawal of the word "distribution" from its proposed Easements do [sic] not institute an "abandonment of "appropriation proceedings" under R.C. 163.21.

10. The Court concludes that the appropriations sought by [Ohio Power] in each of the above- referenced consolidated cases are necessary and for a public use.

*                    *                    *

WHEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED that:

*                    *                    *

2. The withdrawal of the word "distribution" from the Easements is not an abandonment of the appropriation and the Plaintiffs are so directed to modify their easements accordingly.

{¶71} On appeal, we agreed that Ohio Power's admission at the hearing that the distribution lines were unnecessary did not constitute an abandonment of the appropriation proceedings under R.C. 163.21(A). However, we found the distribution line right to be a separate "stick" in the bundle of property rights. *Burns,* 2021-Ohio-2714, ¶ 64. The Supreme Court of Ohio agreed, "The lower courts were correct that R.C. 163.21(A) is not implicated in this case" because that section applies when an agency abandons the "appropriation proceedings." Here the Supreme Court found that Ohio Power had not abandoned the entire proceeding, but instead "that property rights are a bundle of sticks and that Ohio Power relinquished one of the rights within the landowners' bundle in this case . . . ." *Burns*, 2022-Ohio-4713, ¶ 39.

{¶72}  The trial court's initial decision did not treat "distribution line rights" as a stick in the bundle of rights the Landowners held. Instead, it treated it as a "word" that should be edited out of the next version of the easements. This is apparent from the following sentence in which the trial court "concludes that the appropriations sought by [Ohio Power] in each of the above-referenced consolidated cases are necessary and for a public use." The trial court did not treat the distribution lines right as one of the appropriated property rights.

{¶73}  The Supreme Court of Ohio remanded the case to the trial court "to make specific findings concerning the challenged easement terms consistent with the presumption set forth in R.C. 163.09(B)." *Id.* at ¶ 35. In another section of the Court's opinion it stated, "We remand the cause to the trial court for it to consider the appropriations and separately determine whether they are necessary." *Id.* at ¶ 2. The trial court's decision on remand did not address the distribution lines as directed by the Supreme Court. The remand order required the court to consider the testimony about the distribution lines at the hearing against the presumption in R.C. 163.09(B) and make a finding about whether the distribution lines term was necessary. Instead, the trial court determined the distribution line term was moot:

> DISTRIBUTION LINES
> The Distribution Line section of the easement has been dropped by AEP and was discussed by both the Court of Appeals and the Supreme Court Decision and therefore the Court does not need to address it.

{¶74}  The trial court erred as a matter of law in determining that the distribution line term was moot. The discussion of the distribution lines at the appellate level focused on whether Ohio Power's admission at the hearing that the distribution lines were unnecessary constituted "an abandonment of the appropriation proceedings" under R.C.

163.21(A) such that Landowners were entitled to legal fees. The trial court should have reviewed the evidence concerning the distribution lines and determined whether it was necessary and whether Ohio Power was entitled to appropriate that particular property.

{¶75} The easements Ohio Power submitted at the hearing as evidence contained the distribution line easement. However, Rentschler testified that the distribution lines were not necessary. Ohio Power admits the distribution lines are not necessary. There is no dispute – everyone involved in this case agrees that the distribution lines are unnecessary. The trial court's decision determining that the easement "has been dropped" by Ohio Power[7] and so it is now moot is erroneous as a matter of law. The distribution lines easement term is too broad; it takes more than is necessary. The Landowners' easement terms should explicitly exclude the distribution line term because it is unnecessary, and Ohio Power is not entitled to appropriate that particular property right.

### 7. Summary of the Easement Terms

{¶76} We conclude that the trial court's findings that (1) the right to construct term, (2) the access route term, and (3) the Tree Protection Zone term are necessary are supported by some competent and credible evidence and we affirm these findings. We conclude that the trial court's findings that (1) the herbicide vegetation control term (i.e., "otherwise control") (2) the anti-abandonment term, and (3) the distribution lines term are

---

[7] After the hearing and after Landowners filed their notice of appeal in the prior proceeding, Ohio Power filed a "Notice of Filing a Revised Easement" in the trial court that omitted the distribution lines term. To the extent the trial court relied upon this revised easement in making findings about the distribution lines term, it was an error of law because the trial court was required to consider only the evidence presented at the hearing.

necessary are clearly erroneous and the anti-abandonment term and the distribution line term findings are erroneous as a matter of law.

**{¶77}** We overrule, in part, and sustain, in part, the Landowners' second assignment of error.

## IV. CONCLUSION

**{¶78}** The trial court was required to and did conduct a property-specific review of each of the challenged easement terms as to whether they were necessary consistent with the presumption set forth in R.C. 163.09(B)(1)(b). The trial court's findings on the right to construct, the access routes, and the Tree Protection Zone were supported by competent and credible evidence. However, the trial court's finding of necessity on the use of herbicides for vegetation control was clear error as it was not supported by any competent and credible evidence. The trial court's legal findings on the anti-abandonment and distribution lines terms were erroneous as a matter of law. We affirm, in part, and reverse, in part, the judgment of the trial court and remand to the trial court to enter findings on the herbicide term, the anti-abandonment term and the distribution lines term consistent with this decision.

JUDGMENT AFFIRMED IN
PART & REVERSED IN PART. CAUSE
REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, CAUSE REMANDED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**